Jack I. MARLAND, Appellant,

v.

Frances R. HEYSE, Loren Downing, Adas Talley, Cecil McKissick, Hugh Higgins, William Gene Odneal, Rudolph Cheetsos, Frank Burckley and Hjalmer Grondahl, Appellees.

No. 7066.

United States Court of Appeals
Tenth Circuit.
March 26, 1963.

9. 312 F.2d 236, 240–241.

John H. Gately, Santa Fe, N. M., for appellant.

J. Hartley Murray, of Murray, Baker & Wendelken, Colorado Springs, Colo., for appellee Frances R. Heyse.

Wesley H. Doan, of Yegge, Hall & Shulenburg, Denver, Colo., for appellants Loren Downing, Adas Talley, Cecil McKissick, Hugh Higgens, William Gene Odneal and Hjalmer Grondahl.

Before MURRAH, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

This action was brought for the recovery of damages under one of the provisions of the Civil Rights Acts, Section 1979 of the Revised Statutes (1875), 42 U.S.C.A. § 1983.[1] The complaint, in substance, alleges that the plaintiff, Jack I. Marland, was, on three separate and distinct occasions, arrested and imprisoned in deprivation of his Constitutional rights by members of the Colorado Springs, Colorado police department. The police officers are defendants herein along with Frances R. Heyse, a citizen of Colorado Springs, who, it is alleged, conspired with some of the defendants to cause one of the arrests in violation of Section 1980 of the Revised Statutes (1875), 42 U.S.C.A. § 1985. At the conclusion of the plaintiff's evidence, the trial court directed a verdict as to all of the defendants. This appeal is from the judgment entered on the verdict.

The essential facts may be briefly stated. On May 27, 1957, Marland was taken into custody by two members of the Colorado Springs police department. At that time he was employed by the Circus Ice Cream Company to sell ice cream from a roving jeep, and a complaint had been made to the department accusing him of short-changing some children when they purchased ice cream

bars. Marland was held at police headquarters for approximately five hours on this occasion, and, during a portion of this time, he was locked in a cell with several other prisoners. He was subsequently released without being prosecuted.

During the evening of July 9, 1957, two Colorado Springs police officers appeared at the Marland home. Marland and his mother testified that these officers requested Marland to accompany them to police headquarters, and that, upon inquiry, the officers stated that they did not know why he was wanted, but they had received instructions to pick him up. Marland's mother was permitted to deliver him to the police station, but if she had not promised to do this he would have been required to accompany the officers in their police car. He was at that time questioned concerning an alleged molestation of a ten year old female child, an offense which other testimony in the record indicated never occurred. After being interrogated for approximately two hours Marland was released, again without being charged.

On May 25, 1959, Marland was arrested a third time by a member of the Colorado Springs police department. He was questioned about a burglary which was then being investigated, and held in jail over night. On this occasion, too, he was neither charged nor prosecuted.

There was testimony that the three arrests were all made without a warrant, and that no charges were ever filed against Marland. Marland testified that after each arrest he was subjected to extensive questioning, at times accompanied by verbal abuse and threats, and, on two of the occasions, his request to use a telephone to call an attorney or his mother was denied.

---

1. Rev.Stat. § 1979, 42 U.S.C.A. § 1983, provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ This Court has recently examined the civil action created by Section 1979 of the Revised Statutes (1875), 42 U.S.C.A. § 1983, in light of the decision of the Supreme Court of the United States in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. Stringer v. Dilger, 10 Cir., 313 F.2d 536. In that case we held that: "The statutory prerequisites to liability under 42 U.S.C. § 1983 are: (1) that the defendant act 'under color of' state or local law, and (2) that the plaintiff be subjected to a 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.' * * *" (Footnote omitted.) Stringer v. Dilger, supra.

■ It is clear, and the appellees do not contend otherwise, that the police officer defendants in this case acted "under color of" state law. Monroe v. Pape, supra; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495. The same thing is not true with respect to Mrs. Heyse, since, whatever she may have done, she was not acting "under color of" state law, nor was there any evidence that, with the object of depriving Marland of equal protection of the laws, she conspired with any of the officers to cause Marland's arrest. The trial court properly granted her motion for a directed verdict. E. g., Cooper v. Wilson, 6 Cir., 309 F.2d 153; Spampinato v. M. Breger & Co., 2 Cir., 270 F.2d 46, cert. denied 361 U.S. 944, 80 S.Ct. 409, 4 L.Ed.2d 363; Watkins v. Oaklawn Jockey Club, 8 Cir., 183 F.2d 440. Cf.

Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253.

■ In granting the motions for the directed verdicts, the trial court acted upon the assumption that Marland had not been deprived of any "rights, privileges, or immunities secured by the Constitution and laws, * * *", and the narrow question presented by this appeal is whether the arrests, under the circumstances described, deprived him of any of his Constitutional rights. The purpose of Section 1979 is to create a right of action, enforceable in federal courts, against those who, "under color of" state law, deprive any person of any rights, privileges and immunities guaranteed by the Constitution and laws. Monroe v. Pape, supra.[2] We are convinced that the legal principles involved in this case are not distinguishable from Monroe v. Pape, supra, and Stringer v. Dilger, supra, and that it was error to direct a verdict for the police officer defendants. See Hardwick v. Hurley, 7 Cir., 289 F.2d 529. A jury question was presented as to whether the conduct of the police officers on the different occasions was so arbitrary, unreasonable and without probable cause as to subject the plaintiff to a deprivation of rights guaranteed by the Constitution of the United States.

The judgment is affirmed as to the defendant Frances R. Heyse. As to the other defendants, the judgment is reversed and remanded for a new trial.

2. In Monroe v. Pape, 365 U.S. 167, 172, 81 S.Ct. 473, 476, the Court said: "The question with which we now deal is the narrower one of whether Congress, in enacting § 1979, meant to give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position. Cf. Williams v. United States, 341 U.S. 97 [71 S.Ct. 576, 95 L.Ed. 774]; Screws v. United States, 325 U.S. 91 [65 S.Ct. 1031, 89 L.Ed. 1495]; United States v. Classic, 313 U.S. 299 [61 S.Ct. 1031, 85 L.Ed. 1368]. We conclude that it did so intend."