**Delone MARTIN, Plaintiff-Appellant,**

v.

**J. W. DUFFIE et al., Defendants-Appellees.**

**No. 71–1518.**

United States Court of Appeals, Tenth Circuit.

June 5, 1972.

On Rehearing July 28, 1972.

David H. Pearlman, of Aldridge & Pearlman, Albuquerque, N. M., for plaintiff-appellant.

John P. Duffy, Albuquerque, N. M., for appellees.

Before HILL, SETH and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a private civil rights action which arises under 42 U.S.C. § 1983. The trial was to the court without a jury and at the close of the plaintiff's evidence the defendants rested. Thereupon, the trial court, 327 F.Supp. 960, ruled in favor of the defendants and against the plaintiff, dismissing the complaint as to the three named defendants, police officers in Albuquerque, New Mexico. There were unidentified "John Doe" defendants, and the court dismissed these claims as well.

As to the defendants who were and are now before the court the alleged violations of civil rights involve arrest and confinement of the plaintiff. There is other evidence in the case that following plaintiff's arrest, while being questioned at the Albuquerque Police Department, he was struck in the head by a defendant who is not named in this suit. As a result of this blow he suffered a brain

injury which required immediate surgery. On completion of the surgery and his release from the hospital he was again arrested, was confined for a short time and was again released. In the meantime, a charge of burglary had been filed against him, but this charge was dismissed.

The facts, which are not disputed, show that on the night of the plaintiff's arrest, November 14, 1968, officers came to his home in the course of investigating the burglary of a nearby cleaning establishment. Plaintiff and a friend, who testified at the trial and who corroborated his evidence, were present in plaintiff's home at about 9:00 p.m. when uniformed officers, seeking evidence to substantiate the burglary, came to his house and requested permission to search it. Plaintiff gave them such permission, but they found nothing. Later that same evening still another search was conducted by different uniformed officers and this search, like the first one, was non-productive. Finally, the named defendants, Duffie, Marquez and Campbell, came on the scene and again sought evidence and again were unable to find anything incriminating, but these officers nevertheless arrested not only the plaintiff but also his companion, one Sammy White. Plaintiff and White were taken to police headquarters and were questioned and jailed.

White fully corroborated the plaintiff's testimony, including the occurrences at the police station, and also including plaintiff's head injury. Plaintiff's mother also testified. The gist of her testimony was that he had not left his home on the night in question. Her evidence contained details as to his ac-tivities. Also, she described the head injury.

Medical testimony at the trial established that the blow inflicted produced the hemorrhage, although a doctor testified that a slight blow could have produced it in view of the fact that the defendant was shown to have been an alcoholic. However, there is ample circumstantial evidence that the blow was something more than a slight one.

Notwithstanding that the arrest was admittedly carried out without a warrant, the trial court held that the plaintiff had failed to establish that there was a lack of probable cause. The judge ruled that notwithstanding that it was a warrantless arrest, the plaintiff had the burden of negativing the existence of other probable cause for the arrest. We hold that under the facts of this case it was error for the court to reach this conclusion.

The theory of the plaintiff's case was that there was an unlawful arrest followed by an unlawful detention. The particular Act of Congress, § 1983, *supra*, which is the source of this jurisdictional and substantive remedy subjects to liability every person who under color of state law subjects any citizen of the United States to the deprivation of any rights, privileges or immunities secured by the Constitution. The injured party has an action in law or a suit in equity.[1]

■ The underlying constitutional provision here invoked is the Fourth Amendment incorporated in due process of the Fourteenth which prohibits the issuance of warrants except upon probable cause supported by oath and particularly describing the person to be seized.[2]

---

1. The text of this is as follows:
 > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Although there are exceptions to the constitutional requirement that there be an arrest warrant supported by sworn testimony establishing probable cause these are, of course, exceptional circumstances which permit police officers to arrest without a warrant such as in the instance when the crime has been

The trial court having ruled that the plaintiff had failed to prove lack of probable cause for the arrest, the crucial issue here is whether a plaintiff in a § 1983 case who has been arrested without a warrant must, in order to satisfy his burden of proof, negative every possible justification for the arrest without a warrant. We hold that he need only present a prima facie case of illegal arrest in order to sustain his burden.

One other related issue which arises from the conflicting contentions of the parties is whether state substantive law on arrest and confinement is applicable or whether federal substantive law applies; defendants insist that the law of New Mexico governs.

## I.

### FEDERAL SUBSTANTIVE LAW APPLICABLE

The defendants' contention that state substantive law is somehow assimilated into the § 1983 remedy is wholly without merit. The Supreme Court has given clear recognition to the proposition that the rights under this statute and the rights arising under the state common law, although similar, are nonetheless distinct remedies. The same set of facts may give rise to violations of both the federal statute and the state common law, but the rights are not necessarily coterminous and the essential criteria are not necessarily the same. Thus in Monroe v. Pape, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492 (1961), the Court traced the legislative history of § 1983 and noted that the purpose of Congress in passing it was to afford a federal right enforceable in federal court because, the Court said,

\* \* \* by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies.[3]

In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), the Supreme Court again stressed the federal remedy as opposed to that of the state and thus recognized the applicability of federal common law.

There are numerous other decisions which have recognized that the vindication of federal civil rights guaranteed by the Constitution is peculiarly subject to federal substantive law. See Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969), cert. den. 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177; Lefton v. City of Hattiesburg, Miss., 333 F.2d 280 (5th Cir. 1964); Caperci v. Huntoon, 397 F. 2d 799 (1st Cir. 1968), cert. den. 393 U. S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276; Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963).

This court in Marland v. Heyse, 315 F.2d 312 (10th Cir. 1963) said:

The purpose of [Section 1983] is to create a right of action, enforceable in Federal courts, against those who, "under color of" state law, deprive any person of any rights, privileges

committed in its presence or in the instance in which the officer has a reasonable basis for believing that a felony has been committed.

3. The Court added:
\* \* \* It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. \* \* \*
Mr. Justice Harlan was even more explicit in his concurring opinion:

The statute becomes more than a jurisdictional provision only if one attributes to the enacting legislature the view that a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.
365 U.S. at 196, 81 S.Ct. at 488.

and immunities guaranteed by the Constitution and laws.

315 F.2d at 314.

■■ This is not to say that federal courts do not look to state decisions in formulating a federal standard in civil rights actions. The important point is that federal courts are not bound by the decisions of the state court in the district in which they are sitting in the sense that they would be if the case were a diversity action or a pendent jurisdiction case for the tort of false imprisonment.

## II.

■■ The next question is whether it was error for the trial court to conclude that the plaintiff had not sustained his burden of proof as to lack of probable cause for the arrest. We glean from the record and from the arguments of counsel that the trial court's view was that the plaintiff was obligated to search out the subjective viewpoints of the arresting officers in a quest for information as to whether probable cause in a practical sense existed. The cases do not support any such view of the law. Thus in Pierson v. Ray, *supra*, the Court repeatedly recognized the good faith and probable cause as defenses, characterizing them as such, and in its decision [4] it was nowhere suggested that the defendant had the burden of wholly negativing the existence of such defenses. The police officers did not choose to go to trial "and defend the case on the hope that they could convince a jury that they believed in good faith that it was their duty to assault Monroe and his family in this manner." Instead, the Supreme Court continued, "they sought dismissal of the complaint, contending principally that their activities were so plainly illegal under state law that they did not act 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory' as required by § 1983." In commenting on this the Supreme Court said:

> In rejecting this argument we in no way intimated that the defense of good faith and probable cause was foreclosed by the statute. * * * As we went on to say in the same paragraph, § 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions. (Citation omitted). Part of the background of tort liability, in the case of police officers making an arrest, is the defense of good faith and probable cause.
>
> We hold that the defense of good faith and probable cause, which the Court of Appeals found available to the officers in the common-law action for false arrest and imprisonment, is also available to them in the action under § 1983.

87 S.Ct. at 1219.

In so ruling the Court has placed good faith and probable cause in some perspective. It makes it clear that the explanations for arrests which have apparent invalidity must be put forward by the officers as defenses.[5]

This is equally true in a state action for false imprisonment. See Miller v. Stinnett, 257 F.2d 910 (10th Cir. 1958), rehrg. den. August 11, 1958, wherein this court said:

> Since the arrest was not effected under authority of a warrant or other process issued by a court having jurisdiction and regular upon its face, ap-

---

4. The Court was discussing its holding in Monroe v. Pape, *supra*.

5. To the same effect are Strutt v. Upham, 440 F.2d 1236 (9th Cir. 1971); Beauregard v. Wingard, 362 F.2d 901 (9th Cir. 1966); and Whirl v. Kern, 407 F.2d 781 (5th Cir. 1969). See also 35 C.J.S. False Imprisonment § 55, p. 733, which contains a full discussion of burden of proof with respect to probable cause in a false imprisonment case. The cases cited almost without exception hold that a warrantless arrest creates no presumption or inference of validity and further hold that the burden of proof is on the officers to establish probable cause in the circumstances.

pellee cannot invoke the rule which generally gives police officers immunity from liability who act merely as the administrative arm of the court issuing the process. * * *

257 F.2d at 913.

 In the record before us, there being no formal warrant, we find no evidence which tends to show or even hints that there existed probable cause for the arrest and confinement in the minds of the officers or otherwise. As in Monroe v. Pape, *supra*, the officers here elected to not offer independent evidence which would explain or perhaps justify their actions. Instead they stood on what they regarded as the weakness of the plaintiff's case. The plaintiff's evidence appears in a more favorable light. All that we can see is a warrantless arrest, a failure to discover through several searches any tangible evidence, an arrest and confinement and, finally, a filing of a charge which was quickly dismissed. This in our view is substantial evidence in support of the illegality of the arrest and confinement, and in the absence of countervailing evidence it is legally sufficient to support a judgment.

It is true that the burden was on the plaintiff to establish an invasion of his rights: an illegal arrest. He did so by showing arrest and confinement without a warrant and without other justification. The plaintiff having established a prima facie case, the initiative passed to the defendant to go forward with evidence showing justification. Ultimately plaintiff had what is often described as the risk of nonpersuasion on the issue of lack of probable cause. In the case at bar we hold that plaintiff has sustained his burden of proof as to lack of probable cause and in the dearth of explanatory evidence was entitled to judgment.[6]

### III.

The trial court, having decided the case on the liability question, was not called on to consider the damage question and, of course, did not do so. The damage question is now the only issue which the court need take up on remand, at least as to the three defendants who are before us. As we view it, there is no need for further trial as to the three named defendants on the liability question since they have rested their case and considering our conclusion that the court erred in finding for the defendants on the undisputed evidence.

Accordingly, the judgment of the district court is reversed and the cause is remanded with directions to enter judgment for the plaintiff on the liability question, to assess damages, and for further proceedings consistent with the foregoing opinion.

### UPON REHEARING GRANTED

Appellees have filed a motion for rehearing, which is hereby granted.

 On rehearing the appellees have brought to our attention a mistake not appearing in the record, the occurrence of which is now certified as true by the trial court pursuant to Rule 10(e) of the Federal Rules of Appellate Procedure. Defendants-appellees rested their case in open court after the trial court, in chambers, had advised both sides that it intended to dismiss the case. Appellees never moved for dismissal, which would have preserved their right to adduce evidence upon a possible remand.

On the basis that it would be unfair to defendants to require them to abide by this procedural omission, it is hereby adjudged that the mandate be modified as follows:

> The judgment is reversed and the cause is remanded for a new trial at which both sides shall be allowed without restriction to present evidence anew both as to liability and as to damages.

---

6. We are mindful that there may be instances in which the plaintiff's evidence itself creates an issue of fact, but this is not one of them. There is no semblance of basic fact from which an inference favorable to defendants on the probable cause issue can be drawn.