Bobby Dan SCOTT

v.

Bob DeJARNETTE, Correction Officer, Cummins Unit, Arkansas Department of Correction.

No. PB–75–C–158.

United States District Court, E. D. Arkansas, Pine Bluff Division.

May 31, 1979.

Robert D. Smith, III, Little Rock, Ark., for petitioner.

Joyce W. Warren, Asst. Atty. Gen., State of Arkansas, Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

ROY, District Judge.

In this action, predicated on 42 U.S.C. § 1983, the plaintiff, Bobby Dan Scott, alleged that on May 26, 1975, while he was a prisoner at the Cummins Unit of the Arkansas Department of Corrections, he was verbally and physically abused by the defendant Bob DeJarnette, a security officer at the prison, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He also alleged that he was attacked and beaten by other inmates and he was disciplined but they were not. He seeks injunctive relief and damages.

Trial to the Court was held on June 27, 1978. The plaintiff appeared with counsel and offered testimony and exhibits to support his testimony. The testimony of the parties and the witnesses is summarized:

## BOBBY DAN SCOTT

The plaintiff's testimony was that on May 25, 1975 he received a message to go to the count room of the prison. He was greeted there by four inmates who beat him up because he had collected $6.50 in prison script from a "short hair" (a new inmate) who, he claimed, had lost $2,000 to him in a game of chance. Scott testified that he was told that he must give the money back or he would be beaten again.

Scott testified that later on the same day, in the barracks, he was beaten by two other inmates. After the second beating he reported the incidents to Lt. Taylor (a security officer) and then went to the prison infirmary for treatment of his injuries. The infirmary record of this visit was admitted into evidence. It states that Scott had a possible swelling in front of his left ear and a small area of swelling over his left eye. It further states that Scott reported that he was hit in the lower back but that there was no evidence of this. Scott's testimony is consistent with the infirmary report.

Scott testified that on the following day the defendant, Bob DeJarnette, called him into his office, called him names and told him he was a sorry person; that DeJarnette was angry with him because he had put the four prisoners from the count room on disciplinary—because he "got the whole count room busted." Scott explained that these four were trustees who worked for DeJarnette, and that to be a trustee a prisoner must help out some, snitch on somebody, or write up something not true, or go to court and testify.

Scott said that in addition to the verbal abuse that DeJarnette slapped him around and hit him in the stomach. When Scott went to his knees DeJarnette grabbed him back up and slapped him again. Lt. Taylor came to the door and saw what was happening. DeJarnette then told Scott to stand in the hall. DeJarnette called in the two inmates involved in the altercation in the barracks. They reported that Scott was selling insurance to "short hairs" for protection and mistreating them. DeJarnette told Scott that if he told what happened he would call him back into the office. Scott then went to the prison infirmary for treatment of his wounds. No documentary evidence of a visit to the infirmary on that day was offered.

Disciplinary papers were written up on the four inmates who were involved in the fight in the count room but DeJarnette tore them up. Scott was put on barracks arrest for the second fight on the 25th. He then had a hearing before the disciplinary committee and was assigned to punitive isolation for 13 or 14 days for mistreating "short hairs."

Scott also testified that DeJarnette used a blackjack on him about a month later in DeJarnette's office after Scott had failed to report to work. When Scott explained to DeJarnette that he could not work because he had a blister on his foot, DeJarnette hit him in the kidney and hit him twice on the nose with a blackjack. Scott said that Major Chambers from Tucker slapped him around and Lt. Ashley kicked him in the back. There is no evidence that Scott visited the infirmary on that day.

### LT. KENNY TAYLOR

The defendant, Bob DeJarnette, called Kenny Taylor as a witness. Lt. Taylor, building lieutenant at Cummins, testified Scott was charged with violation of Rule 3, fighting with or without a weapon. He stated that about 12 noon on May 25 Scott came to the yard desk and complained of an altercation in the barracks. During the investigation of this fight, Scott reported the fight he had earlier in the count room. Taylor investigated both incidents.

No disciplinary papers were written on Scott for the first fight because no one stated that Scott had hit anyone. Taylor wrote papers on the other inmates involved. Taylor explained that disciplinary papers were written on Scott for the second fight because several witnesses stated that Scott had been causing trouble in the barracks and that inmate Travis was only defending himself. Taylor said that he did not hit, strike, or verbally abuse Scott and that he never saw DeJarnette hit, strike, or verbally abuse Scott.

### BOB DeJARNETTE

The defendant testified that Scott came into his office on May 26 to ask for a barracks change. DeJarnette stated that he may have used profanity toward Scott but that he did not beat or strike Scott in any way; did not threaten to physically harm him in any way; and had not directed anyone under his supervision to threaten or harm him physically. He did not recall a visit in his office that Scott said took place a month after the count room fight.

DeJarnette testified that the four inmates in the count room were good workers and did what was expected in that job and he did not want to lose them to disciplinary action. He further stated that he had the authority to dismiss those disciplinaries himself or reduce them to a minor, but he did not. He OK'd them and sent them through.

### FINDINGS OF FACT

1. At all times herein the plaintiff, Bobby Dan Scott, was an inmate at the Cummins Unit of the Arkansas Department of Corrections and defendant, Bob DeJarnette was a corrections officer of the Cummins Unit.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.

3. On the morning of May 25, 1975 Bobby Dan Scott was summoned to the prison count room where he was involved in a fight with four inmates.

4. At noon on May 25, 1975 the plaintiff was involved in a fight with two other inmates.

5. The plaintiff reported the first fight after the second was reported and was being investigated.

6. Disciplinary papers were written for four inmates involved in the fight in the count room. After investigation by the disciplinary committee a recommendation of not guilty was made because of lack of evidence.

7. No disciplinary was written on Scott for the count room fight.

8. A disciplinary was written on Scott for the second fight. He was reassigned to punitive isolation for 13 or 14 days because

witnesses reported that Scott initiated the fight. No disciplinaries were written on the other two inmates.

9. On May 26, 1975 Scott went to Major Bob DeJarnette's office where some discussion of the events of the previous day took place.

10. Scott was not beaten by DeJarnette on May 26, 1975.

11. Scott was not beaten by DeJarnette one month later.

## CONCLUSIONS OF LAW

### I.

 The burden of proof is on the plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Martin v. Duffie*, 463 F.2d 464 (10th Cir. 1972); *Arkansas Education Ass'n v. Board of Education of Portland*, 446 F.2d 763 (8th Cir. 1971); *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir.) *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Rapheld v. Ice*, 431 F.Supp. 343 (E.D.Mo. 1977). The plaintiff's evidence fails to establish that Major Bob DeJarnette beat or otherwise inflicted any injury on plaintiff. It is not disputed that DeJarnette had the authority to dismiss the disciplinaries against the count-room-four. This being so, the Court fails to perceive any motive for using physical abuse on the plaintiff. In addition, Scott testified that he went to the infirmary on the day DeJarnette allegedly beat him. There were no infirmary records offered into evidence to support this testimony, although the infirmary records do support plaintiff's testimony that he was beaten by other prisoners on the previous day.

### II.

 The plaintiff's second complaint is that he was attacked and beaten by other inmates and they were not punished; whereas he was disciplined for starting the fight in the barracks. These were two separate incidents involving different inmates under different circumstances at different places. There were witnesses to the second fight but none to the first. Plaintiff did not allege or offer evidence that he was discriminated against because of his race or that the disciplinary procedures prescribed by the Inmate Handbook were not followed. See *Finney v. Hutto*, 410 F.Supp. 251 (E.D. Ark.1976), *aff'd* 548 F.2d 740 (8th Cir. 1977), *aff'd* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

 This Court does not review prison disciplinary actions for sufficiency of evidence. It is only when prisoners suffer deprivations of constitutional dimensions that a federal court may become involved. *Courtney v. Bishop*, 409 F.2d 1185 (8th Cir.) *cert. denied*, 396 U.S. 915, 90 S.Ct. 235, 24 L.Ed.2d 192 (1969). No such deprivations are involved in this case.

The Court finds for the defendant. The plaintiff's complaint is dismissed.