Jimmy W. SULLIVAN, Plaintiff,

v.

Richard LaMUNYON, Chief of Police, Wichita, Kansas, Police Department; Vern Miller, District Attorney of Sedgwick County, Kansas; and The City of Wichita, Kansas, Defendants.

Elsie Dee WINTER, Plaintiff,

v.

SEDGWICK COUNTY, Kansas; Jonnie Darr; Sam Davison; John Monahan; Lyman Reese; Richard Gadberry; and Jerry King, Defendants.

Nos. 80–1897, 83–1256.

United States District Court, D. Kansas.

Oct. 5, 1983.

Jimmy W. Sullivan, Robert L. Mitchell, Wichita, Kan., for Jimmy W. Sullivan.

H.E. Jones, John Dekker, Wichita, Kan., for City of Wichita, Kan.

Patrick L. Connolly, Miller, Connolly, Gribble & Parker, Wichita, Kan., for Vern Miller.

S.A. Issinghoff, Asst. City Atty., Wichita, Kan., for Richard LaMunyon.

Phelps-Chartered, Margie J. Phelps, Topeka, Kan., for Elsie Dee Winter.

Edward L. Keeley, Sedgwick County Counselor, Wichita, Kan., for Sedgwick County, Kan., Jonnie Darr, Sam Davison, John Monahan, Lyman Reese, Richard Gadberry and Jerry King.

## OPINION AND ORDER

THEIS, Senior District Judge.

These are civil rights cases. Sullivan's case is based on substantive violations of 42 U.S.C. § 1983 and the Fourteenth Amendment, with jurisdiction predicated on 28 U.S.C. §§ 1331, 1343(3). Winter's case is based on substantive violations of 42 U.S.C. §§ 1981, 1983, and the First and Fourteenth Amendments, with jurisdiction predicated on 28 U.S.C. §§ 1331, 1343(3). Both cases are before the Court on motions by the defendants to dismiss on the grounds that the applicable statutes of limitations expired before the complaints were filed. This opinion will deal only with the statute of limitations questions. Other matters properly before the Court in Sullivan's case will be dealt with in a separate opinion filed concurrently with this one.

### I. FACTUAL BACKGROUND

#### A. Sullivan's Case

Sullivan's *pro se* complaint was filed on November 24, 1980. Sullivan alleges that his constitutional rights were violated by acts of the defendants in the nature of false arrest, false imprisonment, and malicious prosecution. According to the complaint, the acts on which this case is based began with Sullivan's arrest on December 5, 1978 and culminated with a verdict of not guilty of the crime charged on February 27, 1979, and reinstatement of federal parole on March 2, 1979.

Shortly after the complaint was filed, the defendants moved to dismiss on the ground that the applicable statute of limitations barred the suit. This Court overruled that motion in a four-page Memorandum and Order, filed October 1, 1981, holding that the three-year statute of limitations found at K.S.A. § 60–512(2) controlled the case.

Defendants City of Wichita and Richard LaMunyon renewed their motion to dismiss on September 20, 1982, by moving for summary judgment on the ground that the statute of limitations had expired. In support of this motion these defendants cited the recent case of *Miller v. Overland Park, Kansas,* 231 Kan. 557, 646 P.2d 1114 (1982), in which the Kansas Supreme Court applied the one-year statute of limitations found at K.S.A. § 60–514 to a case similar to this one.

### B. Winter's Case

Winter was employed as a law enforcement officer by the defendant Sedgwick County from 1975 until April 6, 1980, when she resigned. According to the complaint, Winter's job performance was exemplary, but she was nevertheless forced to resign because of sexual and racial harassment. She filed her complaint on March 16, 1983.

The defendants moved, on April 12, 1983, to dismiss on the ground that the statute of limitations had expired. The defendants argue that the two-year statute of limitations found at K.S.A. § 60–513 should control this case. Winter argues that either the three-year statute found at K.S.A. § 60–512 or the five-year statute found at K.S.A. § 60–511 should control.

## II. ANALYSIS AND DISCUSSION

### A. Introduction

These two actions are only the latest examples of a long line of troublesome cases concerning the appropriate statute of limitations to apply to civil rights cases. They are, however, typical of these statute of limitations disputes. Between the two cases, sixty pages of briefs are devoted to the statute of limitations question, exclusive of the briefs provided to the Court when the statute of limitations issue was originally raised in Sullivan's case. Even though both cases are predicated, at least in part, on § 1983, the limitations periods for which the parties argue are widely divergent, ranging from one year to five years.

As a preliminary matter, the Court would note that such heated disputes can only occur when the controlling law and the precedential case law interpretations of it are either nonexistent or confusing and contradictory. The particular question with which these cases are concerned is cursed on both counts. On the one hand, Congress, for some unarticulated reason, neglected to incorporate a statute of limitations into the statutory scheme presently codified at 42 U.S.C. §§ 1981–88.[1] Thus, even though the federal protection of civil rights is a statutory area, there is no federal statute of limitations to which the civil rights statutes are subject. In this sense, the controlling law for these cases is nonexistent. On the other hand, the precedential case law in this area, on which both litigants and the courts must rely for guidance, is hopelessly confusing and contradictory.

The environment created by the lack of explicit statutory commandments and the irreconcilability of the case law precedents is, as might be expected, conducive to particularly chaotic and unprincipled motion-making. The lifeblood of these civil rights cases, instead of flowing through the merits of the disputes, is wholly diverted into the utterly unproductive area of which statute of limitations to apply. As a consequence, the substantive charges often wither from neglect. A tremendous amount of resources, both on the part of litigants and the court system, is frittered away in what amounts to nothing more than a glorified exercise in conceptual futility. This Court can perceive no element of principled decisionmaking that is served by these disputes or by their detailed resolution. The ends of justice would be immeasurably better served by a single bright-line test in the form of a single, uniform statute of limitations to be applied to all actions under §§ 1981–88, providing to litigants, lawyers, and the courts alike a predictable limita-

---

1. The sole exception is 42 U.S.C. § 1986, which contains an express one-year statute of limitations. References in this opinion to the lack of statutes of limitations in §§ 1981–88 should be read to implicitly exclude § 1986.

tions period engendering few disputes that could be easily and economically resolved.

Of course, the best means to achieve this goal lies not with the courts, but with the United States Congress. An explicit federal statute of limitations passed by Congress and signed by the President for civil rights cases would clearly settle the matter. Absent that, the next-best solution would be an opinion from the United States Supreme Court that establishes a uniform nationwide period of limitations. The third-best solution, at least from this Court's perspective, would be an en banc opinion from the United States Court of Appeals for the Tenth Circuit that establishes a uniform period of limitations. Absent that, there is no solution, because the problem itself is the fragmented, unpredictable, and wasteful case-by-case analysis currently performed by the United States District Courts in this Circuit. Because neither Congress nor the Supreme Court has seen fit to remedy a situation that has now become intolerable, this Court sees no alternative but to raise a plaintive plea to the Tenth Circuit to establish a just, fair, and workable uniform limitation period for civil rights cases. This opinion is such a plea.

### B.  Present State of the Law

■ No one disputes that Congress has failed to provide an explicit statute of limitations applicable to the civil rights statutes, or that this Court is obligated, under that circumstance, to apply the most appropriate limitations period provided by state law. *See Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Chattanooga Foundry and Pipe Works v. City of Atlanta,* 203 U.S. 390, 27 S.Ct. 65, 51 L.Ed. 241 (1906); *Campbell v. City of Haverhill,* 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed.. 280 (1895). It is the method by which the "most appropriate" period is to be selected, and, of course, the particular period itself, that are disputed in these cases.

The Supreme Court has been remarkably unhelpful in the search for the method by which the most appropriate period is to be selected. The Tenth Circuit, in *Zuniga · v. AMFAC Foods, Inc.,* 580 F.2d 380 (10th Cir.1978), derived particular guidance from the cases of *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), and *Runyon v. McCrary, supra.* A critical examination of those two cases fails to reveal a clearly stated preference for any particular method. In *Auto Workers,* the Supreme Court simply stated that

> the characterization of this action for the purpose of selecting the appropriate state limitations provision is ultimately a question of federal law ... [b]ut there is no · reason to reject the characterization that state law would impose unless that characterization is unreasonable or otherwise inconsistent with national ... policy.

*Auto Workers, supra* at 706, 86 S.Ct. at 1113 (citations omitted). Likewise, in *Runyon,* the Court simply affirmed the period selected by the District Court and affirmed by the Court of Appeals by stating that

> the petitioners' contention is certainly a rational one, but we are not persuaded that the Court of Appeals was mistaken in applying the two-year statute ... We are not disposed to displace the considered judgment of the Court of Appeals on an issue whose resolution is so heavily contingent upon an analysis of state law, particularly when the established rule has been relied upon and applied in numerous suits filed in the Federal District Courts
> . . . .

*Runyon,* 427 U.S. at 181, 96 S.Ct. at 2599–2600 (citations omitted).

In the face of such ambiguous guidance, the Courts of Appeals have, predictably, adopted divergent methods by which the correct limitations period is to be chosen. The majority of the Courts of Appeals, comprising the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits, have adopted some form of uniform limitation period for civil rights cases. *See Walden III v. State of Rhode Island,* 576 F.2d 945 (1st Cir.1978); *Williams v. Walsh,* 558 F.2d 667 (2d Cir.1977); *Bireline v. Seagon-*

*dollar,* 567 F.2d 260 (4th Cir.1977), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979); *Proctor v. Flex,* 567 F.2d 635 (5th Cir.1978); *Warner v. Perrino,* 585 F.2d 171 (6th Cir.1978); *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977); *Martin v. Georgia-Pacific Corp.,* 568 F.2d 58 (8th Cir.1977); *Briley v. State of California,* 564 F.2d 849 (9th Cir.1977). The remaining Courts of Appeals, comprising the Third, Tenth, and Eleventh Circuits, have adopted an "essential nature" test for determining the limitations period for civil rights cases. Under that test, the District Courts are forced to examine the factual background of the civil rights claim with an eye towards divining the "essential nature" of that claim in state law nomenclature. Thus, a civil rights claim must be found to have the "essential nature" of a tort claim, or of a tort subtype such as assault or false imprisonment, or of a claim on a written or unwritten contract, even if the civil rights claim really has the "essential nature" of none of these state law claims. Once the District Court has dressed the civil rights claim in its new state law clothes, the state limitation period that would have been applied had the civil rights claim been brought as its state law analogue in a state court is applied. *See Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir.1977); *Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380 (10th Cir.1978); *Prince v. Wallace,* 568 F.2d 1176 (Former 5th Cir. [Now 11th Cir.] 1978).

Although the conceptual difference in these two approaches is immediately apparent, the practical difference at the District Court level is even more striking. For example, litigants, lawyers, and the District Courts in the Seventh Circuit know that all civil rights claims predicated on §§ 1981–88 will be subject to the state statute of limitations for actions on liabilities created by statute, *Beard, supra* at 338. Statute of limitations questions are therefore reduced to a simple mechanical comparison of the date on which the cause of action accrued and the date on which the action was filed. Lawyers for both plaintiffs and defendants may advise their clients with confidence of whether a particular action is timely. Tru-

ly contested questions can arise only over the time the cause of action accrued. Very little time is spent by the District Courts on statute of limitations questions.

In contrast, litigants, lawyers, and the District Courts in the six states of the Tenth Circuit cannot know for certain which state statute of limitations controls a particular civil rights case before the question is litigated and possibly appealed. In Kansas, the District Court must decide whether the essential nature of the civil rights complaint is most analogous to (1) a libel, slander, assault, battery, malicious prosecution, false imprisonment, or action for a statutory penalty or forfeiture, subject to the one-year statute of limitations of K.S.A. § 60–514; (2) an action for injury to the rights of another, not arising on contract and not otherwise provided for, subject to the two-year limitation of K.S.A. § 60–513; (3) an action on an oral contract or for a liability created by a statute, subject to the three-year limitation of K.S.A. § 60–512; or (4) an action on a written contract, subject to the five-year limitation of K.S.A. § 60–511.

Attorneys, rightfully interested in meeting their ethical obligation to represent their clients zealously within the bounds of the law, feel compelled to argue in every civil rights case in which the complaint is filed more than one year after the act giving rise to the liability that a longer or shorter statute of limitations applies, as the interests of their clients may appear, because the question is result-determinative. Successful litigation of the statute of limitations question disposes of the lawsuit just as completely as successful litigation on the merits. The incentive to argue over the proper statute of limitations is increased by the indistinct boundaries of each of the statutory categories and the frequent applicability of more than one period to each claim. Multi-count complaints alleging several discrete acts by the defendants that allegedly violate the plaintiff's civil rights are potentially subject to a different limitations period for each count, even though the complaint alleges that all the discrete acts

violate but one federal statute. In addition, the one area of genuine dispute remaining in those circuits that have adopted a uniform statute of limitations—namely, the date on which the cause of action accrued—also remains an area of genuine dispute under the essential nature test.

One of the drawbacks of the essential nature test is the potential applicability of more than one limitations period to a single civil rights claim. This drawback has already been addressed by the Tenth Circuit in *Shah v. Halliburton Co.,* 627 F.2d 1055 (10th Cir.1980). There, an action under § 1981 was found to be potentially subject to both Oklahoma's two-year statute of limitations for torts and three-year statute of limitations for contract actions and actions on a liability created by a statute. The Tenth Circuit, without explicitly recognizing this as an inherent problem with the essential nature test, simply declared that, as a matter of policy, the longest statute of limitations that arguably applies to a particular claim should be applied to that claim, *Shah, supra* at 1059.

The most recent Tenth Circuit case on this particular aspect of the statute of limitations problem is *Garcia v. University of Kansas,* 702 F.2d 849 (10th Cir.1983). There, Chief Judge Seth, joined by Judge Markey of the United States Court of Customs and Patent Appeals, held that the *nature* of the civil rights cause of action, as distinguished from the *manner* in which the civil rights were actually violated, is dispositive of the statute of limitations question, *id.* at 850. The opinion appears to require the *uniform* application of the two-year period of K.S.A. § 60–513, governing actions for injuries to the rights of another, to all civil rights claims brought in the United States District Court for the District of Kansas, despite the obvious inconsistency of this method with that mandated by *Zuniga* and *Shah.* Judge Seymour's dissent is convincing in pointing out that *Zuniga* and *Shah* should have been followed in the absence of an en banc reconsideration of the matter.

The lack of a consistent and easily applied analytical framework has wreaked havoc in this Court. The Judges have applied periods ranging from one year, *see Cowdry v. City of Eastborough, Kansas,* No. 78–4243 (D.Kan., *unpub.,* April 17, 1980); *Hill v. Butts,* No. 79–4072 (D.Kan., *unpub.,* August 20, 1981); to five years, *see Nave v. CRA, Inc.,* No. 78–1525 (D.Kan., *unpub.,* July 25, 1979), and have analogized civil rights claims to simple torts, *see Powell v. Metzler,* No. 79–4137 (D.Kan., *unpub.,* October 21, 1980), false imprisonment, *see Hamilton v. City of Overland Park, Kansas,* No. 82–2370 (D.Kan., *unpub.,* April 15, 1983), actions on liabilities created by statute, *see Shepard v. Welch,* No. 74–243–C6 (D.Kan., *unpub.,* October 16, 1981), and contract actions, *see Nave, supra.* Some opinions do not cite state court authority, while others appear to indicate that the particular Judge felt bound by state court opinions, *see Campbell v. Boeing,* No. 77–4053 (D.Kan., *unpub.,* July 25, 1983). Some opinions resolve the problem created by *Garcia* by strictly limiting *Garcia* to its facts, *see Gutierrez v. Boeing,* No. 81–4232 (D.Kan., *unpub.,* August 12, 1983), while other opinions appear to apply the two-year period mandated by *Garcia* by rote, *see Robertson v. Fox,* No. 82–4188 (D.Kan., *unpub.,* June 9, 1983). Still other opinions have flatly refused to consider the issue until the Tenth Circuit definitively resolves the statute of limitations question, *see Dobrec v. Robinson,* No. 79–1671 (D.Kan., *unpub.,* August 18, 1983).

It is apparent that this muddled state of affairs cannot long go uncorrected by the Tenth Circuit. Because no course has been clearly and consistently charted through these waters, this Court sees no alternative but to independently exercise its best judgment and to explain the reasoning behind the decision it reaches. The exceptional importance of the proper resolution of this question, not only as a controlling question of law for this case but as a controlling question of law for *all* of the very numerous civil rights cases brought in this circuit, and the substantial ground for difference of opinion created by the apparent-

ly conflicting decisions of the Tenth Circuit, convince this Court that an immediate interlocutory appeal would materially advance the ultimate termination of these two cases. The Court will, therefore, announce its judgment and certify an immediate interlocutory appeal from that judgment to the United States Court of Appeals for the Tenth Circuit, pursuant to 28 U.S.C. § 1292(b).

■ For the reasons that follow, it appears to this Court that a complete rationalization of civil rights statutes of limitations in this circuit can be accomplished only by abandoning the essential nature test propounded by *Zuniga* and adopting in its place a policy of applying one uniform statute of limitations to all civil rights cases brought pursuant to §§ 1981–88. It further appears to this Court that, of the available state limitations periods, that applicable to actions on a liability created by a statute is the most appropriate one to apply as a uniform civil rights limitations period.

As previously detailed, the essential nature test invites feckless litigation, wastes irreplaceable resources, delays the vindication of important constitutional rights, and serves no discernable element of principled decisionmaking. The test is fraught with complex difficulties and bereft of concrete advantages. The only reason that the test is utilized in this circuit is because the United States Court of Appeals for the Tenth Circuit has interpreted several arguably ambiguous cases from the United States Supreme Court to require it. Although the Tenth Circuit's reading of those cases is clearly a rational one, there is undoubtedly room for reasonable minds to differ over whether the essential nature test has been mandated by the Supreme Court. The current split of authority indicates that reasonable judges in the First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Ninth Circuits have read the Supreme Court precedents differently than they have been read by the Tenth Circuit. The current vitality of a uniform statute of limitations policy in eight circuits indicates to this Court that the uniform policy is at least as

rational and defensible under current Supreme Court precedents as the essential nature test. In all likelihood, the two methods are but equally valid alternative ways of addressing the statute of limitations problem.

Under the circumstance of having two equally valid but conflicting methods for reaching the same goal, this Court believes that the most rational way to make the necessary choice between them is to compare their ease of utilization and economy of effort. This Court faces difficult work with gusto and will never be heard to complain of the time or effort required to apply the substantive law to the rights of the parties before it. This Court is, however, far too busy with real work to have much patience with busywork. It is for this reason that this Court strives for simplicity and economy in its non-substantive procedural rules: the most limited asset, time, is thereby preserved for the important substantive pursuits of the Court. It is also for this reason that this Court feels compelled to establish a simple, economical, and uniform statute of limitations for civil rights cases. If the essential nature test is nothing but an abstractly defensible alternative procedure to a uniform statute of limitations policy, the busywork required to sustain it only diverts the Court's time and efforts from substantive and productive pursuits to procedural and nonproductive pursuits. Modern caseloads simply do not permit such a diversion. The Court must, therefore, adopt the policy of selecting a single, uniform statute of limitations for all civil rights cases under §§ 1981–88.

Another important benefit besides simplicity served by this adoption is its effect of reducing the present conflict between the circuits. Although the Courts of Appeals are not bound by each other's decisions, uniformity between the circuits is obviously an important goal, as shown by the frequent grants of certiorari by the United States Supreme Court to resolve inter-circuit conflicts. Inter-circuit uniformity is a particularly relevant consideration in areas such as the one presently

under consideration, where no element of principled decisionmaking is served by the conflicting methods and standards mandated by the Courts of Appeals in the minority. The federal civil rights statutes are national in both scope and application, and should be applied with the greatest possible uniformity in all areas of the country.

Simply deciding that a single, uniform statute of limitations should apply to all civil rights cases only solves half of the problem, however. The question remains of which particular period to utilize as a uniform statute of limitations for all civil rights cases. Two guiding principles in selecting the appropriate period appear particularly important to this Court. First, the selection of an appropriate period is a matter of federal law, *see Auto Workers,* 383 U.S. at 706, 86 S.Ct. at 1113; *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *Zuniga, supra* at 383. The doctrine announced in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is therefore wholly inapplicable to the task of selecting the appropriate period. The pronouncements of the Kansas Supreme Court, although persuasive on the meanings of the various limitations provisions, are not binding precedent on this Court in the application of those provisions to the federal civil rights statutes.

Second, the conceptual purpose behind statutes of limitations in general must not be forgotten in a rush to select the appropriate period. Statutes of limitations

> are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.

*Order of Railroad Telegraphers v. Railway Express Agency, Inc.,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944); *see also Miller v. Cudahy,* 567 F.Supp. 892, 908–09 (D.Kan.1983). In selecting an appropriate limitations period for civil rights cases, it is crucial to keep in touch with the reality of these cases. A violation of someone's civil rights is a serious matter, not likely to be quickly forgotten. The defendants in civil rights cases are often policemen, sheriffs, or other governmental authority figures; the governmental offices or departments for which they work; and the governments themselves. Charges of misconduct against such defendants are notoriously difficult of both discovery and proof, oftentimes making the search for a lawyer who is willing to prosecute those charges a frustrating and time-consuming adventure. The seriousness and difficulty of these cases argues strongly against a short limitations period that would serve primarily to thwart justice by defeating meritorious claims other than on the merits, rather than to serve justice by preventing stale claims from being presented.

With these two principles in mind, the Court finds only two Kansas statutes of limitations that are arguably applicable to *all* civil rights cases: the two-year limitation of K.S.A. § 60–513(4) "for injury to the rights of another, not arising on contract, and not herein enumerated," and the three-year limitation of K.S.A. § 60–512(2) for "an action upon a liability created by a statute other than a penalty or forfeiture." The Court finds the latter of these periods to be the most appropriate.

In *Thomas v. Pick Hotels Corp.,* 224 F.2d 664 (10th Cir.1955), the Tenth Circuit wrote that

> a right of action created by statute within the meaning of subsection two of the Kansas statute of limitations is one which must not have existed at common law when the statute was adopted. To be created by the statute, the action must not exist but for the statute.

*Id.* at 666. The question is thus whether the rights of action embodied in §§ 1981–88 were created by these statutes, or were part of the common law, of which the statutes are "merely declaratory," *Thomas, supra* at 666.

It is easy to lose sight of the rights being protected when answering this question. In Sullivan's case, for example, it is easy to label his cause of action as one for false

arrest, false imprisonment, and malicious prosecution. A cursory examination of Kansas law reveals cases predating the passage of the Civil Rights Act of 1871, from which § 1983 has been derived, that recognize those precise causes of action. *See Mayberry v. Kelly,* 1 Kan. 116 (1862) (false arrest and imprisonment); *Malone v. Murphy,* 2 Kan. 250 [2d Ed. 245] (1864) (malicious prosecution); *Wiley v. Keokuk,* 6 Kan. 94 [2d Ed. 59] (1870) (false arrest and imprisonment). The conclusion that Sullivan's cause of action was not created by statute, and is therefore not entitled to the three-year limitation of K.S.A. § 60–512, seems inevitable. Such an analysis is, nevertheless, erroneous.

It is erroneous because Sullivan is not seeking a remedy for false arrest, false imprisonment, and malicious prosecution *per se.* Instead, he is seeking a remedy for the violation of his constitutional rights under a federal statute that creates liabilities for such violations. The differences between these two causes of action are many, varied, and highly significant.

First and foremost, the different sources of the rights themselves is crucially important. The state rights to be free from false arrest, false imprisonment, and malicious prosecution derive directly from the judge-made English common law. The constitutional right to due process, in contrast, is explicitly provided by the Constitution itself. That venerated document creates the foundation and provides the ultimate boundary of all American laws, and is completely separate from and superior to the common law. The Constitution is, in effect, our supreme statute, and it created the civil rights that the federal civil rights statutes implement. Those statutes, in turn, do not create "a body of general federal tort law" on a par with state tort doctrines, *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976). Instead, they seek to vindicate the solemn guarantees of the Constitution by creating direct liabilities for constitutional wrongs that were simply nonexistent at common law. As Justice Harlan wrote in an oft-quoted passage,

a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.

*Monroe v. Pape,* 365 U.S. 167, 194, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (concurring opinion). The Tenth Circuit has subscribed to the essential difference between constitutional rights and state law rights, *see Martin v. Duffie,* 463 F.2d 464, 467 (10th Cir.1972). In the same vein is the recent statement by Professor Leon Friedman that

successful suits brought under section 1983 teach state officers what the Constitution demands of them. It would defeat the purpose of the Congress that passed the law to relegate victims of official abuse to state courts. The Congress that passed what is now section 1983 demanded a mechanism by which state officers could be called to account if they violated the Constitution. They were not satisfied with the vagaries of state tort law, which protected different interests at times and gave different remedies. Violation of a constitutional right is more serious than violation of a common law right. An assault or trespass by a police officer who cannot legally be resisted and who acts with the full power of the state behind him is different than an assault or trespass by a neighbor. The common law remedies later available to a victim of a police officer's assault do not supply due process because they do not protect the same interests as section 1983 and do not measure the same violations. To say that the Constitution no longer has a role to play if state officers beat up a citizen or invade her home is to turn history on its head.

L. Friedman, *Parratt v. Taylor: Opening and Closing the Door on Section 1983,* 9 Hastings Const.L.Q. 544, 575. Labeling a violation of a constitutional right as a simple tortious "injury to the rights of another" under state law denigrates the majesty of the Supreme Law of the Land, to which

all state and federal laws, as well as all state and federal courts, are subservient.

Second, the elements of the state and constitutional actions are widely divergent. Were Sullivan to press a false imprisonment claim in a state court, for example, all he would have the burden of proving is that

> he was restrained of his liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard.

*Thompson v. General Finance Co., Inc.,* 205 Kan. 76, 88, 468 P.2d 269 (1970). In contrast, the burden on Sullivan in the present civil rights case is to prove that he was deprived of "rights, privileges or immunities secured by the Constitution and laws" of the United States by a "person" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," 42 U.S.C. § 1983. Were Sullivan to prove only the § 1983 elements in a state false imprisonment case, he would lose. Were he to prove only the state false imprisonment elements here, he would likewise lose. The causes of action are clearly not identical, and the cause of action created by § 1983 requires the plaintiff to carry the burden of proving a particular set of facts that, if proven alone in a common law proceeding, would simply fail to demonstrate any liability on the part of the defendant.

Third, the legal issues to be considered, other than the bare elements of the state and constitutional actions, are often quite different. A highly specialized and very complex body of case law has grown up around the federal civil rights statutes that simply has no application to state causes of action. One of the more obvious elements of this specialized case law—discussed in detail in the companion opinion in *Sullivan,* also filed today—is the requirement of a municipal custom or policy as a predicate to municipal liability for the constitutional violations committed by the municipality's employees, *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). This requirement has no application to state

law actions for false arrest, false imprisonment, or malicious prosecution, primarily because the quite different requirements found in the Kansas Tort Claims Act, K.S.A. §§ 75–6101 through 75–6118, would apply in the event a municipality can even be held accountable for a false arrest, false imprisonment, or malicious prosecution committed by one of its employees under Kansas law. Such potential liability is rendered tenuous at best by the broad exception in the Kansas Tort Claims Act for "discretionary functions," *see* K.S.A. § 75–6104(d). Until fairly recently, municipalities in Kansas enjoyed a qualified immunity for the negligent acts of their employees engaged in a "governmental function" such as operating a police or sheriff's department, *see, e.g., Wommack v. Lesh,* 180 Kan. 548, 305 P.2d 854 (1957).

These three areas of significant substantive difference between the cause of action created by § 1983 and the common law causes of action for state wrongs are sufficient to demonstrate that the § 1983 cause of action simply did not exist at common law when § 1983 was adopted, and that the § 1983 cause of action is, therefore, one "created by a statute" within the meaning of K.S.A. § 60–512(2). Because civil rights cases predicated on §§ 1981–88 seek to vindicate specific and discrete rights by invoking the unique liabilities created by the Constitution and the civil rights statutes, K.S.A. § 60–512(2) is applicable to those cases. Because K.S.A. § 60–512(2) is applicable to those cases, K.S.A. § 60–513(a)(4) must be inapplicable because civil rights cases are actions "herein enumerated [in K.S.A. § 60–512(2)]" within the meaning of that subsection.

An alternative conceptual path also leads inexorably to the conclusion that K.S.A. § 60–512(2) is the appropriate limitations period to apply uniformly to all civil rights cases. If, on whatever grounds, the conclusion of *Garcia* that all cases should be subject to the two-year period of K.S.A. § 60–513(a)(4) is accepted, that does nothing to vitiate the conclusion, just demonstrated, that K.S.A. § 60–512(2) is also ap-

plicable to those cases. Under that circumstances, the sound policy decision of the Tenth Circuit to apply the longest limitations period that arguably applies, *see Shah, supra* at 1059, mandates the application of the three-year period of K.S.A. § 60–512(2) in preference to the two-year period of K.S.A. § 60–513(a)(4).

The selection of the statute of limitations for liabilities created by statute as the most appropriate one to apply uniformly to all civil rights cases is especially fitting in the context of a rule for all six states of the Tenth Circuit. An examination of the statutes of those six states shows all but one of them have statutes of limitations specifically addressed to liabilities created by statute. *See* Colo.Rev.Stat. § 13–80–106; K.S.A. § 60–512(2); Okla.Stat. tit. 12, § 95(2); Utah Code Ann. § 78–12–26(4); Wyo.Stat. § 1–3–115. The lone exception is New Mexico, which appears to apply either the three-year period for personal injuries found at N.M.Stat.Ann. § 37–1–8 or the four-year period for miscellaneous claims found at N.M.Stat.Ann. § 37–1–4 to civil rights claims, *see Gunther v. Miller,* 498 F.Supp. 882 (D.N.M.1980). Uniform application of the limitations period for liabilities created by statute in five of the states comprising the Tenth Circuit, coupled with uniform application of one of the two potentially applicable New Mexico statutes, would appear to offer the maximum simplicity and uniformity possible under the circumstance of having six discrete sets of state law with which to deal.

A final point deserves to be made. In the process of adopting a uniform three-year limitations period for all civil rights cases predicated on §§ 1981–88 brought in this Court, the Court is aware that the benefits of the five-year limitation of K.S.A. § 60–511 will be denied to litigants who formerly could argue for its application. The Court does not see this as a flaw inherent in adopting a uniform period, but rather as a conceptually defensible improvement over prior practice. K.S.A. § 60–511 governs actions on written contracts. The reason for the lengthy period—the existence of a written contract that can serve valuable evidentiary functions—is obvious. In the context of civil rights cases, however, the involvement of written contracts was often collateral at best. Often the existence of a written contract between a labor union and an employer was seized upon as an appropriate justification to apply the longer period, even though that contract usually had absolutely nothing to do with the acts of discrimination that triggered the civil rights suit. In this Court's opinion, civil rights plaintiffs should be held to a uniform statute of limitations on all civil rights claims, even if a written contract can be collaterally implicated. Just as the violation of a constitutional right is fundamentally different from a state tort, so is it fundamentally different from a private contract between two parties.

For all of the foregoing reasons, IT IS HEREBY ORDERED that the motions to dismiss in both *Sullivan* and *Winter* predicated on the expiration of the applicable statute of limitations are overruled because the three-year period of K.S.A. § 60–512(2) controls these cases.

IT IS FURTHER ORDERED that the judgment expressed in this Opinion and Order is certified for an immediate interlocutory appeal to the United States Court of Appeals for the Tenth Circuit, in accordance with the express written findings herein, *supra* pp. 758–759, and in accordance with 28 U.S.C. § 1292(b).