928 F.2d 558
 Deborah RUGGIERO, Christine Ruggiero and Joseph Ruggiero,
Plaintiffs-Appellees, Cross-Appellants,
v.
Anthony KRZEMINSKI and Charles Lemons, Individually and in
their official capacities as Officers in the
Police Department of New Haven,
Connecticut,
Defendants-
Appellants,
Cross-Appellees.
 Nos. 600, 666 and 696, Dockets 89-9257, 90-7093 and 90-7515.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 15, 1990.
Decided March 18, 1991.
 
 Martin S. Echter, Deputy Corp. Counsel, New Haven, Conn., for defendants-appellants-cross-appellees.
 John R. Williams (Williams and Wise, New Haven, Conn., of counsel) for plaintiffs-appellees-cross-appellants.
 Before FEINBERG, PIERCE and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Defendants-appellants Officers Krzeminski and Lemons (the "Officers") appeal from a judgment for nominal damages and attorney's fees entered in the United States District Court for the District of Connecticut (Eginton, J.) following a jury trial in a civil rights action predicated on an illegal search and seizure conducted in the home of plaintiffs-appellees. Responding to special interrogatories submitted by the court, the jury found that there had been a consent to the entry of the premises and that the seizure of certain objects within the premises was permissible under the doctrine of "plain view" and by consent. However, the jury, in further response to interrogatories, determined that a warrantless search within the premises was improper because it was neither a search incident to a lawful arrest nor one conducted with the consent of the proper party. The Officers contend on appeal that the jury should have been permitted to consider whether the search was permissible under the doctrine of "plain view" and therefore assert that the court denied the Officers a valid defense theory by failing to include the theory of "plain view" search in its special interrogatory and in its instruction. We hold that no error was committed by the district court in either the framing of its interrogatories or in its jury instruction because the doctrine of "plain view" does not validate searches conducted without a warrant.
 
 
 2
 On cross-appeal, plaintiffs-cross-appellants ("the Ruggieros") contend that the district court erred by failing to place on the Officers the burden of proving exceptions to the search warrant requirement. Instead, the judge gave the jury the customary charge with respect to the burden of proof in civil actions. We find that no error was committed by the district court in so instructing the jury, and that, in any event, the burden of proving unreasonable search in an action brought under 42 U.S.C. Sec. 1983 (1988) should be borne by those who urge unreasonableness.
 
 BACKGROUND
 
 3
 At 3:54 a.m. on March 24, 1984, New Haven police officers Krzeminski and Lemons reported to an apartment in New Haven, Connecticut to investigate a possible burglary. The complainant, Anthony Signore, told the officers that several items had been taken from his apartment. Signore explained that Deborah Ruggiero ("Debra"), his girlfriend and roommate, had taken his possessions and vandalized his apartment. He provided the Officers with the address of Debra's parents' home in East Haven, Connecticut, where he believed Debra could be found, and with a list of the items allegedly stolen.
 
 
 4
 Upon arriving at the East Haven address, the Officers knocked on the back door of the Ruggieros' house. This door led directly into the kitchen of the residence. When Joseph Ruggiero, Debra's father, opened the door to see who was there, the Officers entered. The Ruggieros allege that the Officers barged into the kitchen. The Officers allege that they were invited in and offered coffee by the Ruggieros.
 
 
 5
 From the back door entranceway leading to the kitchen, the Officers testified that they had an unobstructed view of the adjoining dining room and living room directly beyond the dining room. The Officers asked to see Debra, and Joseph Ruggiero pointed to Debra, who was sitting on the stairs leading to the upstairs of the house. They then inquired about the items taken from Signore's apartment, and Joseph Ruggiero pointed in the direction of the adjoining dining room and living room. Officer Lemons went into the living room and dining room and identified specific items that were on Signore's list. At some point, Christine Ruggiero, Debra's mother, telephoned the East Haven Police Department in an attempt to contact her brother, Frank Ranfone, who was an East Haven patrolman.
 
 
 6
 Eventually, Ranfone and East Haven police sergeant John Alves arrived at the Ruggiero home. Debra was given a citation for criminal mischief in the second degree, and several items allegedly stolen by Debra were taken by the Officers to the New Haven Police Department property room.
 
 
 7
 On May 28, 1985, the Ruggieros commenced this action under 42 U.S.C. Sec. 1983, claiming violations of their fourth and fourteenth amendment rights. Specifically, they claimed that the Officers had performed an illegal search and seizure and that Debra had been arrested on false charges. The court granted a partial summary judgment to defendants on the issue of false arrest. The other claims were tried before a jury.
 
 
 8
 At trial, several witnesses, including Debra, Debra's sister, Lisa Marinaccio, and Christine Ruggiero testified that Officer Lemons had opened up boxes located in the living room and dining room and searched through their contents. The testimony of Joseph Ruggiero, as well as that of Officer Krzeminski, revealed that the boxes were closed prior to the search. Officer Lemons testified that certain items described in Signore's list could be seen from his position in the kitchen. Krzeminski likewise testified that the items were visible from the entranceway into the kitchen and from his vantage point inside the kitchen. Only the items observed by the Officers in this manner were seized. The contents of the boxes, apparently personal possessions belonging to Debra, were not taken.
 
 
 9
 Before the jury retired, the trial judge presented the jurors with a series of special interrogatories. The first interrogatory asked if entry into the house was justified. The jury answered that the entry was justified by "consent." The second interrogatory, under the caption "search", asked whether the "defendants [had] consent to search?" and whether the "defendants confin[ed] their search to the area under the immediate control of the arrestee?". The jury answered "no" to both. A third interrogatory asked whether the "defendants [had] consent to seize the property?" and whether the "defendants seiz[ed] the property pursuant to the 'plain view' exception?". The jury answered that the seizure was justified by both "consent" and by the "plain view" exception. On the issue of search, the Officers requested that the district court instruct the jury that "if an officer is legally on the premises he may search for items ... if they are in plain view." The interrogatory proposed by the Officers included the question, "Did the defendants see the disputed personal property in 'plain view'?". The trial judge rejected the Officers' proposed special interrogatory and their proposed jury charge.
 
 
 10
 Although the jury found that the Ruggieros suffered no compensatory damages by reason of the illegal search, the trial judge directed the award of nominal damages in the sum of one dollar. Finally, the trial judge found that the Ruggieros were prevailing parties within the meaning of 42 U.S.C. Sec. 1988 and accordingly awarded them attorney's fees. Both plaintiffs and defendants made various motions for post-trial relief, all of which were denied by the trial judge.
 
 DISCUSSION
 
 11
 "Plain view" search
 
 
 12
 The Officers contend that no unlawful search occurred, and thus the trial court deprived them of a valid defense theory by rejecting their proposed jury instruction and special interrogatory. They maintain that, by only asking the jury whether the Ruggieros consented to a search or whether the search was incident to an arrest without also asking whether a search occurred at all, the court restricted the jury's ability to find in their favor. To enable the jury properly to consider their defense theory, they submitted an interrogatory that would have asked whether the search was legal under the "plain view" doctrine; specifically, they wished to include a question under the caption "search" that asked whether "the defendants [saw] the disputed personal property in 'plain view'?". They requested a jury instruction that "if an officer is legally on the premises he may search for items ... if they are in plain view."
 
 
 13
 The trial court is given broad discretion in framing interrogatories under Fed.R.Civ.P. 49(a). Cutlass Prods., Inc. v. Bregman, 682 F.2d 323, 327 (2d Cir.1982); Cann v. Ford Motor Co., 658 F.2d 54, 58 (2d Cir.1981), cert. denied, 456 U.S. 960, 102 S.Ct. 2036, 72 L.Ed.2d 484 (1982). However, such discretion "cannot be exercised in a manner [that] withdraws from the jury's consideration a valid theory of defense upon which defendant has produced sufficient evidence." Cutlass Productions, 682 F.2d at 328-29; see Ajax Hardware Mfg. Corp. v. Industrial Plants Corp., 569 F.2d 181, 187 (2d Cir.1977). The validity of special interrogatories may be assessed by considering them in conjunction with the jury instructions. See Cutlass Productions, 682 F.2d at 327. Additionally, "to put a trial court in error for declining to grant a requested charge, the proffered instruction must be accurate in every respect." United States v. Leonard, 524 F.2d 1076, 1084 (2d Cir.1975), cert. denied, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976).
 
 
 14
 The "plain view" doctrine is a well-recognized exception to the fourth amendment warrant requirement. Texas v. Brown, 460 U.S. 730, 735, 103 S.Ct. 1535, 1539, 75 L.Ed.2d 502 (1983); Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971). We have held that three conditions must be met before the doctrine may justify official action: "First, the initial intrusion by the police officer must be lawful so that he can justify being in a position to make his discovery. Second, the discovery [of evidence] must be inadvertent. Third, the police must have had probable cause to believe that the item seized was evidence of a crime." United States v. Moreno, 897 F.2d 26, 32 (2d Cir.) (citations omitted), cert. denied, --- U.S. ----, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); United States v. Bonfiglio, 713 F.2d 932, 936 (2d Cir.1983). Recently, the Supreme Court held that the evidence need not be inadvertently discovered in order for "plain view" to justify the seizure. Horton v. California, --- U.S. ----, 110 S.Ct. 2301, 2310, 110 L.Ed.2d 112 (1990). Thus, after Horton, when at least the two "plain view" requirements are satisfied, the seizure of objects without a warrant will be deemed reasonable.
 
 
 15
 We reject the Officers' contention that they were deprived of a valid defense by the court's rejection of their "plain view" search interrogatory and instruction. The court was correct in determining that the doctrine of "plain view" cannot be invoked in connection with a search, because the doctrine is associated only with the seizure of items. See Horton, 110 S.Ct. at 2306 ("If 'plain view' justifies an exception from an otherwise applicable warrant requirement, ... it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches."). It never has been held that the "plain view" doctrine serves to validate a warrantless search. The Officers' proposed interrogatory and jury instruction might have misled the jury to believe that the sight of closed containers in "plain view" justifies the search of those containers.
 
 
 16
 It is clear from the answers to the interrogatories that the jury found that, although the Officers seized only the items reported stolen that were within their plain view, they also searched through boxes, an action for which no justification existed. In particular, the jury found that the Officers seized only those items, such as framed posters, a coffee table and so forth, that they viewed from their vantage point in the kitchen. However, the search of Debra's personal belongings stored within closed cartons, the contents of which were not among those items seized, was found not to be justified by any exception to the warrant requirement. These findings are both consistent and amply supported by the evidence.
 
 
 17
 We think the Supreme Court's warning in Coolidge that "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges," 403 U.S. at 466, 91 S.Ct. at 2038, is of particular relevance here. The inclusion in the special interrogatory and jury instruction of "plain view" as a justification for the search of closed boxes might have gone far toward producing the result prohibited by the Court in Coolidge. We do not find that the special interrogatories or the charge in this case failed accurately to advise the jury of applicable legal standards. The court instructed the jury that a warrantless search may be lawful if consented to or if incident to a lawful arrest. It further instructed that a seizure may be lawful in the absence of a warrant if consented to or if the items were in "plain view." These are correct statements of fourth amendment legal principles. Additionally, the record amply supports the jury's finding that the Officers conducted an unlawful search when they opened and rummaged through the contents of boxes in the dining room and living room of the Ruggiero home.
 
 Burden of Proof
 
 18
 The Ruggieros, on cross-appeal, maintain that the trial judge erred by failing to instruct the jury that the burden of proving the exceptions to the fourth amendment warrant requirement rested on the defendants. Because the defendants withdrew the affirmative defense of consent and failed to plead affirmatively the defense of "plain view," the Ruggieros also assert that the district court erred in allowing consent and "plain view" to be considered by the jury. We find the Ruggieros' contention regarding the allocation of the burden of proof to be without merit and consequently conclude that the exceptions need not be pleaded affirmatively by the defense.
 
 
 19
 It is elementary that in a civil action, the plaintiff bears the burden of proof on all essential elements of a claim. To succeed on a claim asserted under 42 U.S.C. Sec. 1983, a party must prove that he or she was deprived of a right secured by the Constitution or by the laws of the United States and that the person or persons depriving the party of the right acted under color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988); Rojas v. Alexander's Dep't Store, Inc., 924 F.2d 406, 408 (2d Cir.1990).
 
 
 20
 The Ruggieros maintain that once they established that the search and seizure were not authorized by a warrant, the burden should shift to the defendants to prove that the search and seizure were justified by one of the specific exceptions. But
 
 
 21
 [t]he fourth amendment is not violated merely because the state officials lack a warrant ... to perform a search and seizure; to the contrary, a considerable body of law is devoted to the proposition that, in a specified set of situations, ... searches[ ] and seizures of property are "reasonable" under the fourth amendment, notwithstanding the fact that the officials have not obtained a warrant authorizing their actions.
 
 
 22
 Crowder v. Sinyard, 884 F.2d 804, 825 (5th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2617, 110 L.Ed.2d 638 (1990). We agree with the Fifth Circuit that the essential element to be proved, in the type of action involved here, is whether the search and seizure were reasonable under the circumstances.
 
 
 23
 It is true that searches and seizures conducted without warrants are presumptively unreasonable. E.g., Payton v. New York, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1976); United States v. Zabare, 871 F.2d 282, 289 (2d Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 161, 107 L.Ed.2d 119 (1989); United States v. Gallo-Roman, 816 F.2d 76, 79 (2d Cir.1987). The operation of this presumption, contrary to the Ruggieros' contention, cannot serve to place on the defendant the burden of proving that the official action was reasonable. Rather, the presumption may cast upon the defendant the duty of producing evidence of consent or search incident to an arrest or other exceptions to the warrant requirement. However, the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials. See Fed.R.Evid. 301; Crowder, 884 F.2d at 825-26; Gilker v. Baker, 576 F.2d 245, 246 (9th Cir.1978). We see no reason to depart from the usual allocation of burdens in a civil trial.
 
 
 24
 Here, the trial judge, after extensive discussion with counsel and independent research, fashioned a charge neutral with respect to the burden of proof on consent as follows: "In this case, the defendant police officers claim that they did have consent to enter. The plaintiffs claim that the defendant police officers did not have consent to enter. You have to decide ... based upon the totality of the circumstances whether the defendant officers did enter the Ruggiero home with or without consent to enter." See United States v. Kon Yu-Leung, 910 F.2d 33, 41 (2d Cir.1990) (validity of consent to search dependent upon the totality of the circumstances). The judge later instructed the jury about the customary burden of proof in a civil action and the requirement that plaintiffs must prove all the essential elements of a section 1983 claim. The district court did not err in instructing the jury on the allocation of burdens of proof.
 
 Nominal damages award
 
 25
 The Officers contend that the trial judge erred by requiring that the jury enter an award of one dollar in nominal damages after the jury found in favor of plaintiffs on the unlawful search claim but nonetheless found that no compensable damages had been proved. In Carey v. Piphus, 435 U.S. 247, 267, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978), the Supreme Court determined that a plaintiff, who suffered a deprivation of an absolute right, is "entitled to recover nominal damages not to exceed one dollar" in the absence of proof of actual damages. We have directed lower courts to award nominal damages when substantive constitutional rights had been violated but no compensatory damages had been proved. See Smith v. Coughlin, 748 F.2d 783, 789 (2d Cir.1984) ("even when a litigant fails to prove actual compensable injury, he is entitled to an award of nominal damages upon proof of violation of a substantive constitutional right"); see also Burt v. Abel, 585 F.2d 613, 616 (4th Cir.1978) (per curiam) (holding that trial court should award nominal damages, even where no actual injury is proved, when a constitutional violation has been found). Therefore, because the jury found a constitutional violation, but did not find that the Ruggieros had proved consequential damages, the trial judge committed no error in directing the jury to award nominal damages. See, e.g., Farrar v. Cain, 756 F.2d 1148, 1152 (5th Cir.1985); Lancaster v. Rodriguez, 701 F.2d 864, 866 (10th Cir.) (per curiam), cert. denied, 462 U.S. 1136, 103 S.Ct. 3121, 77 L.Ed.2d 1373 (1983); Kincaid v. Rusk, 670 F.2d 737, 746 (7th Cir.1982).
 
 Attorney's fee award
 
 26
 Finally, the Officers advance several arguments regarding the award of attorney's fees under 42 U.S.C. Sec. 1988. First, they argue that the Ruggieros were not "prevailing parties" within the meaning of section 1988 because they attained only limited success in the lawsuit. Second, they maintain that the court erred in not lowering the lodestar for routine matters and matters not involving expertise, such as travel time, and in any event, that the lodestar was incorrectly based on the counsel's billing rate rather than on the prevailing rate of attorneys with like skills in the geographic area. Finally, it is argued that the total hours credited by the trial court were excessive.
 
 
 27
 We find appellants' interpretation of the meaning of "prevailing party" under section 1988 to be incorrect. Section 1988 provides, in relevant part, that in federal civil rights actions "the court, in its discretion, may allow the prevailing party, ... a reasonable attorney's fee as part of the costs." Texas State Teachers Ass'n v. Garland Indep. School Dist., 489 U.S. 782, 788, 109 S.Ct. 1486, 1491, 103 L.Ed.2d 866 (1989). A party who achieves only partial success in his or her suit may be considered to be a "prevailing party" where he or she "succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (citation omitted). In a case such as the case at bar, where the claims arise out of a common core of facts and involve related legal theories, success may be assessed by examining whether plaintiffs can "point to a resolution of the dispute which changes the legal relationship between [them] and the defendant[s]." Texas State Teachers, 489 U.S. at 792, 109 S.Ct. at 1493.
 
 
 28
 Based on the Supreme Court's "generous formulation," id., we think it clear that the Ruggieros were "prevailing parties" as required by section 1988. The jury's determination that appellants' fourth and fourteenth amendment rights were violated by the search conducted by the Officers assuredly is significant. Simply because the jury found that the Ruggieros did not establish their claims in all respects does nothing to lessen the significance, or importance, of the Ruggieros' success. Although no compensatory damages were awarded, the jury's determination "changes the legal relationship" between the Ruggieros and the Officers in that a violation of rights had been found.
 
 
 29
 Regarding the Officers' other challenges to the award of attorney's fees, we note that the trial judge's calculation of an award will not be disturbed unless he has abused his discretion. Pierce v. Underwood, 487 U.S. 552, 571, 108 S.Ct. 2541, 2553, 101 L.Ed.2d 490 (1988). Here, the trial court awarded fees in the amount of $12,833.34. That amount was based on 142 hours devoted by counsel to the litigation, less 1.5 hours for irrelevant research and less 30.5 hours for post-trial motion work, multiplied by $175 per hour. The court reduced the lodestar--the figure arrived at by multiplying the number of hours by the rate per hour--by one-third on account of the limited success achieved in the litigation. We think that the lower court's calculation represents a careful consideration of all factors which go into the calculus, namely, a reasonable hourly rate, the hours and efforts of plaintiffs' counsel that were devoted to the litigation and plaintiffs' limited success in the suit. Hensley, 461 U.S. at 436-37, 103 S.Ct. at 1941-42; Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984); Cohen v. West Haven Bd. of Police Comm'rs, 638 F.2d 496, 505 (2d Cir.1980). On that basis, we find no abuse of discretion in the computation of the award.
 
 
 30
 We have considered appellants' and cross-appellants' remaining arguments and believe them to be without any merit.
 
 CONCLUSION
 
 31
 On the basis of the foregoing, the judgment of the district court is affirmed.