In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2170

SHARON BOGAN,

*Plaintiff-Appellant*,

*v.*

CITY OF CHICAGO, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-03852—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 20, 2011—DECIDED JULY 6, 2011

Before RIPPLE and HAMILTON, *Circuit Judges*, and
MURPHY, *District Judge*.[*]

RIPPLE, *Circuit Judge*.    Sharon Bogan brought this
action under 42 U.S.C. § 1983, in which she claimed
that two Chicago police officers, Matthew Breen and

[*] The Honorable G. Patrick Murphy, United States District
Judge for the Southern District of Illinois, is sitting by designa-
tion.

William Langley, had violated her rights under the Fourth Amendment of the Constitution of the United States when they entered and searched her home without a warrant. The case was tried before a jury, and the jury returned a verdict in the officers' favor. Ms. Bogan now appeals. She maintains that the district court erred in instructing the jury and in rendering certain evidentiary rulings. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A. Facts

At about 2:30 a.m. on May 9, 2009, Officers Breen and Langley responded to a report of domestic battery at the apartment of Nicole Evans. Evans's eight-year-old son had dialed 911 and stated that his mother was being beaten. Upon arriving at the second floor apartment, the officers knocked on the door and announced their presence; a male voice from inside the apartment yelled, "What the f - - - - do you want?" R.123 at 190. They also heard a woman screaming for help. They followed the sounds of the woman's pleas and located her on the roof of the building.

When they found Evans, she was in a state of partial undress and mentally distraught. She explained that her

boyfriend,[1] Antonio Pearson, had been drinking all day with friends. When Evans tried to wake him, Pearson had beaten and choked her. The officers led Evans off the roof into a stairwell; at that point, they observed that she had "[l]acerations, scratch marks around her neck and also bruising and scratch marks on her arms." R.123 at 239. Evans told the officers that she wanted Pearson arrested. Officers Breen and Langley went back up onto the roof to find a way into the apartment, where they believed Pearson likely had gone and where Evans's children still were.

Through the window, Officer Langley then spotted an African-American male in the bedroom of the apartment. After making eye contact with Officer Langley, the man ran out of the bedroom to the rear of the apartment. The officers entered the apartment through an open window and searched every room in the apartment; while in the apartment, the officers received a flash message informing them that there was a black male on the rear porch of the building.

The officers then proceeded across the hall through an open doorway. Although there was a stairwell to the right, the officers did not believe that Pearson could have escaped down the stairs because other officers had arrived at the scene. Across the hall was a door, which they believed led directly to the porch or a mudroom adjacent to the porch. They tried the handle on the

---

[1] The record is unclear if Antonio Pearson is Evans's husband or boyfriend.

door, but it was locked. Officer Breen then kicked the door once or twice, but it was opened from within by Ms. Bogan.

Ms. Bogan asked the officers for whom they were looking. They responded Evans's boyfriend. Ms. Bogan replied, "That's my son." R.124 at 18. At the time that Ms. Bogan opened her apartment door, there were between ten and twelve Chicago police officers already in her apartment; they apparently had entered through the back door. Officers Breen and Langley conducted a search of her apartment, but they could not locate Pearson.

## B. District Court Proceedings

Ms. Bogan instituted this action; she alleged that Officers Breen and Langley had violated her Fourth Amendment rights by entering and searching her apartment without a warrant.[2] At trial, Officer Breen answered the following question posed by his counsel:

> Q.  . . . At the time that you're moving through Nicole Evans' apartment, did you believe Antonio Pearson was moving to the rear of the building?
>
> A.  Yes.

---

[2] Ms. Bogan also named the City of Chicago "to obtain a declaratory judgment of the City's obligation to indemnify defendants . . . for any judgment which may be entered against [them] for compensatory damages." R.16 at 1.

R.123 at 196. Ms. Bogan's counsel objected to the testimony on the ground that the question whether Ms. Bogan's Fourth Amendment rights were violated is governed by an objective standard; consequently, the officer's subjective beliefs were irrelevant. The district court responded: "It doesn't mean subjective evidence is irrelevant. The objection is overruled." *Id.* Following this ruling, Ms. Bogan's counsel did not object to other questions designed to elicit the officers' impressions or understanding of the situation. *See id.* at 197 ("What did you expect was behind that door?"); *id.* at 202 ("Was there time to make an effort to secure a warrant at this time? . . . Why not?"); R.124 at 8 ("And I believe we left off with the issue of whether you had any reason to believe there was a living quarters behind that door. And what is your memory of that, sir?"). Ms. Bogan's counsel, however, did examine the officers extensively on what they had observed and how reasonable—or unreasonable—their actions might have been on the evening they searched Ms. Bogan's apartment. *See* R.123 at 210 ("And you didn't have time to get a warrant? . . . And you didn't see that person that you were searching for go into the apartment? . . . Nobody told you he went into the apartment? . . . You just guessed that he's more likely to be in the apartment than down the stairs; is that right?"); *id.* at 225 ("So you looked through every room in that . . . apartment for Antonio; is that right? . . . And you did that because you didn't have any reason to believe he had left; isn't that right?"); *id.* at 234-35 ("You never heard [Pearson] open any doors to get out of the apartment? . . . You didn't see any footprints in

the hallway between the two apartments? . . . Nobody told you that he was in the rear apartment, did they?").

At the close of evidence, the district court instructed the jury that it was Ms. Bogan's burden to establish that the officers had violated her rights. The court stated:

> As a general rule, a police officer must have a search warrant before he may enter a person's home or search a person's home. However, the law establishes certain exceptions to the requirement of a search warrant. One of those exceptions is referred to as the hot pursuit exception.

> Under this exception, a police officer may enter a person's home if, under all the circumstances, a reasonable officer would believe that the entry is necessary to prevent the escape of a person who is suspected of a crime and there is insufficient time to obtain a search warrant. The question is what a reasonable officer would believe, not what the particular officers in this case actually believed.

> To succeed on their claim in this case as to the particular defendant you're considering, Ms. Bogan must prove by a preponderance of the evidence that a reasonable officer in the defendant's position would not have believed that a crime suspect was in Ms. Bogan's home.

R.124 at 90-91.[3] After deliberating for just over an hour, the jury returned a verdict for the defendants. The district court later denied Ms. Bogan's motion for judgment as a matter of law and entered judgment for the officers on the jury verdict. Ms. Bogan timely appealed.

## II

## DISCUSSION

### A. Instructional Error

Ms. Bogan first maintains that the district court's instruction on burden of proof constituted reversible error. According to Ms. Bogan, the burden of proof fell on the officers to establish that their actions were justified by exigent circumstances. "We review jury instructions de novo to determine whether, taken as a whole, they correctly and completely informed the jury of the applicable law." *Huff v. Sheahan*, 493 F.3d 893, 899 (7th Cir. 2007). "We defer to the district court's phrasing of an instruction that accurately states the law; however, we shall reverse when the instructions 'misstate the law or fail to convey the relevant legal principles in full' and when those shortcomings confuse or mislead the jury and prejudice the objecting litigant." *Id.* (quoting *Byrd v. Illinois Dep't of Pub. Health*, 423 F.3d 696, 705 (7th Cir. 2005)) (additional internal citation omitted).

---

[3] The district court had employed the same language as part of its preliminary instructions to the jury. *See* R.123 at 149.

We have not addressed the precise question raised by this appeal: In a § 1983 warrantless-search action, in which the defendants claim that the search was justified based on exigent circumstances, which party bears the burden of proving the presence or absence of such circumstances? However, we have confronted a related question. In *Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 1997), we addressed the issue of which party in a warrantless-search case bears the burden of establishing the plaintiff's consent—or lack of consent—to the search. In *Valance*, after recognizing that the circuits were split on the issue of who, in the civil context, bore the burden of proof on this issue, we expressed agreement with the approach taken by the Second Circuit in *Ruggiero v. Krzeminski*, 928 F.2d 558 (2d Cir. 1991). We stated:

> In *Ruggiero*, for example, the Second Circuit observed that although a warrantless search generally is considered presumptively unreasonable, "[t]he operation of this presumption . . . cannot serve to place on the defendant the burden of proving that the official action was reasonable." 928 F.2d at 563. The court concluded that at most, the presumption may require the defendant to produce evidence of consent *or of some other recognized exception* to the warrant requirement. *Id.* Yet once the defendant has done so, "the ultimate risk of nonpersuasion must remain squarely on the plaintiff in accordance with established principles governing civil trials." *Id.* (citing Fed. R. Evid. 301).

> We generally agree with *Ruggiero*'s formulation of the proper allocation of the parties' burdens in a section 1983 action alleging a Fourth Amendment violation.

*Valance*, 110 F.3d at 1278-79 (emphasis added) (alteration in original) (additional internal citations omitted). We noted that, "[e]ven if a presumption of unreasonableness arises from the fact of a warrantless search, that does not serve in a civil case to shift 'the burden of proof in the sense of the risk of nonpersuasion.'" *Id.* at 1279 (quoting Fed. R. Evid. 301). Instead, "[t]he presumption merely serves to impose on the defendant 'the burden of going forward with evidence to meet or rebut the presumption,' which a defendant would do by presenting evidence that the plaintiff consented to the search." *Id.* (quoting Fed. R. Evid. 301) (internal citation omitted). Consequently, "[i]n order to prove that the search was unreasonable, . . . the plaintiff would be required to show either that he never consented or that the consent was invalid because it was given under duress or coercion." *Id.*

Our reasoning in *Valance* was informed by the nature of civil cases and the principle that, in civil cases, the plaintiff must bear the ultimate burden of nonpersuasion. As suggested by our language in *Valance*, as well as that of the Second Circuit in *Ruggiero*, this rationale applies with equal force whether the officers seek to justify their search based on consent or on "some other recognized exception." *Valance*, 110 F.3d at 1278.

Ms. Bogan acknowledges our holding in *Valance* but argues that it should not apply to the circumstances

presented here. Ms. Bogan maintains that the distinction between consent and exigent circumstances is an important one: The facts that determine whether a plaintiff consented to a search are uniquely within the plaintiff's knowledge; however, the facts that establish exigent circumstances are uniquely within the knowledge of the pursuing officers. We do not find this distinction persuasive. No part of our analysis in *Valance* included reference to what information was uniquely available either to the plaintiff or to the defendant. Furthermore, Ms. Bogan does not point us to any Fourth Amendment cases for which this consideration played a role in determining the allocation of the burden of proof. To the contrary, as the Government demonstrates, other aspects of Fourth Amendment jurisprudence undermine Ms. Bogan's contention. For example, "a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause," *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) (per curiam); however, whether an officer had probable cause for an arrest is wholly dependent upon the facts *known to the officer* at the time of the arrest.

Ms. Bogan also argues that extending *Valance*'s rationale to searches justified on exigent circumstances would place us at odds with our sister circuits. Specifically, in her reply brief, she contends that this court would create a split among the circuits if it were to "hold that it is proper to instruct a jury that plaintiff has the burden of [] disproving the existence of exigent circumstances to justify a warrantless entry into the home." Reply Br. 7.

It is true that some circuits have placed the burden of proof on the officer to establish exigent circumstances, *see, e.g., Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010). However, there generally "is a difference of opinion in the federal courts as to the burden of proof applicable to § 1983 unconstitutional false arrest claims." *Davis v. Rodriguez*, 364 F.3d 424, 433 n.8 (2d Cir. 2004) (observing that the Fifth and Eleventh Circuits place the burden of proof on the plaintiff and the Third and Tenth Circuits place the burden of proof on the officers); *see also Trulock v. Freeh*, 275 F.3d 391, 401 n.4 (4th Cir. 2001) (noting the existence of a split specifically with respect to the burden of establishing consent). Moreover, this split predated our decision in *Valance. See Davis*, 364 F.3d at 433 n.8 (citing cases). Thus, extending the rationale of *Valance* to exigent circumstances may deepen a preexisting circuit split, but it does not create a new one.

Moreover, we do not find the reasoning of the opinions on which Ms. Bogan relies persuasive. Ms. Bogan points to four court of appeals opinions in her reply brief: *Hardesty v. Hamburg Township*, 461 F.3d 646, 655 (6th Cir. 2006); *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996); *Hopkins v. Bonvicino*, 573 F.3d 752, 764 (9th Cir. 2009); and *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010). Each of these cases, *without discussion*, recites the proposition that "[t]he government bears the burden of proving that exigent circumstances . . . existed to justify a warrantless search," *Hardesty*, 461 F.3d at 655, and relies on a *criminal* case for support, *see, e.g., id.* (citing *United States v. Bates*, 84 F.3d 790, 794 (6th Cir.

1996)). However, for the reasons set forth in *Valance* and *Ruggiero*, employing a criminal burden of proof is contrary to "'established principles governing civil trials,'" namely, that "'the ultimate risk of nonpersuasion must remain squarely on the plaintiff.'" *Valance*, 110 F.3d at 1278 (quoting *Ruggiero*, 928 F.2d at 563).[4]

---

[4] Ms. Bogan also argues that "[p]lacing the burden of proof on the defendant would be in accord with the common law rule 'that once a plaintiff showed arrest and imprisonment without process, the burden shifted to the defendant to show justification.'" Appellant's Br. 19 (quoting *Patzig v. O'Neil*, 577 F.2d 841, 849 n.9 (3d Cir. 1978)). However, this case does not involve a claim of false imprisonment, but of a warrantless search. Moreover, in this circuit, we long have followed the rule that "a plaintiff claiming that he was arrested without probable cause carries the burden of establishing the absence of probable cause." *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009) (per curiam) (collecting cases). Finally, we note that one of the cases that Ms. Bogan relies upon, *Martin v. Duffie*, 463 F.2d 464, 467 (10th Cir. 1972), actually outlines much of the same analysis that we adopt here. In *Martin*, the Tenth Circuit stated:

> It is true that the burden was on the plaintiff to establish an invasion of his rights: an illegal arrest. He did so by showing arrest and confinement without a warrant and without other justification. The plaintiff having established a prima facie case, the initiative passed to the defendant to go forward with evidence showing justification. Ultimately plaintiff had what is often described as the risk of nonpersuasion on the

(continued...)

4  (...continued)
     issue of lack of probable cause. In the case at bar we
     hold that plaintiff has sustained his burden of proof
     as to lack of probable cause and in the dearth of ex-
     planatory evidence was entitled to judgment.

*Id.* at 469.

Although Ms. Bogan has not come forward with any Seventh Circuit law suggesting that the *Valance* approach may not be appropriate, the officers did identify two cases which, it notes, conceivably could be read to support Ms. Bogan's argument on burden of proof: *Jacobs v. City of Chicago*, 215 F.3d 758, 770 (7th Cir. 2000), and *Llaguno v. Mingey*, 763 F.2d 1560 (7th Cir. 1985) (en banc), *abrogated on other grounds by County of Riverside v. McLaughlin*, 500 U.S. 44 (1985).

In *Jacobs*, the district court had dismissed the plaintiff's complaint on qualified immunity grounds. According to the complaint, officers had sought and obtained a warrant to search " 'Troy,' a 30-year-old black male, and a single family residence at 15138 Lincoln Avenue." *Jacobs*, 215 F.3d at 763-64. When the officers arrived at the address, they discovered it was an apartment building and executed the warrant on the first floor apartment. The owner-occupant of the apartment advised the officers that there were two other apartments in the building, none occupied by a Troy. The officers, neverthe- less, broke down the door of the second floor apartment, where Jacobs, a sixty-year-old man, resided; one officer held a gun to Jacobs's head, while the other officer ransacked the apartment. Jacobs later brought suit against the officers for Fourth Amendment violations. The district court granted the defendant-officers' motion to dismiss on qualified immunity

(continued...)

Finally, Ms. Bogan maintains that, even if *Valance* articulates the correct standard, "[t]his Court has cautioned

---

[4] (...continued)

grounds. On appeal, we noted that "the notice pleading requirements of Rule 8 do not require that a plaintiff anticipate the assertion of qualified immunity by the defendant and plead allegations that will defeat that immunity." *Id.* at 765 n.3. Instead, it was incumbent on the "Defendant Officers to show that they had probable cause." *Id.* at 770. Because the facts as alleged in the complaint gave "no indication that exigent circumstances existed in this case," *id.*, we reversed the district court's dismissal of the complaint and remanded for further proceedings.

We believe that the statement in *Jacobs* must be placed in the procedural context in which it arises, namely, a motion to dismiss. For *pleading purposes*, a plaintiff need not anticipate, and eliminate, every possible exception to the warrant requirement. The same rule does not apply, however, when, after a trial on the merits, the defendants have come forward with evidence that they were in hot pursuit of a violent offender.

In *Llaguno*, the court found the entire probable-cause instruction inadequate. *See Llaguno*, 763 F.2d at 1568-69. The court then "add[ed] that, on retrial, the instructions should emphasize the importance that the Fourth Amendment has been interpreted to place on having a magistrate make the judgment of probable cause. The burden of proof should be placed on the police to establish the existence of an emergency that prevented them from obtaining a warrant." *Id.* at 1569. *Llaguno* cited no authority for this proposition, and, moreover, that decision predates our holding in *Valance*, which clearly addresses the issue of burden of proof.

against instructing juries about burden shifting models in employment cases." Appellant's Br. 17. However, after reviewing the instruction on burden of proof, *see supra* at 6, we have no concerns regarding jury confusion. The instruction did not take the jury, in detail, through the burden-shifting mechanism set forth in *Valance*; there was no mention of the burden shifting, nor did the instruction require the jury to distinguish burden of proof from burden of production. Because the officers had come forward with evidence of exigent circumstances, the only question posed to the jury was whether Ms. Bogan had met her ultimate burden of showing that the police did not reasonably believe that Pearson would be found in Ms. Bogan's apartment. The district court's instruction on burden of proof correctly and clearly stated the law, and, consequently, we find no error on this basis.

## B. Evidentiary Rulings

As we noted earlier, at trial Officer Breen was allowed to answer the following question posed by counsel: "At the time that you're moving through Nicole Evans' apartment, did you believe Antonio Pearson was moving to the rear of the building?" R.123 at 196. Ms. Bogan maintains that this question elicited Officer Breen's subjective beliefs and that those beliefs were irrelevant to the issue before the jury—whether the officers had conducted an illegal search. We review a district court's evidentiary rulings for an abuse of discretion. *See, e.g.*, *United States v. Owens*, 424 F.3d 649, 653 (7th Cir. 2005).

The exigent circumstances doctrine recognizes that there may be situations in which law enforcement officials may be presented with "'a compelling need'" to conduct a search, but have "'no time to secure a warrant.'" *United States v. Dowell*, 724 F.2d 599, 602 (7th Cir. 1984) (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978)). The doctrine has been applied to the escape of a suspect and also to situations that pose a danger to the officers or to others. *See id.* (citing *Warden v. Hayden*, 387 U.S. 294, 298-300 (1967)). "[A] police officer's subjective belief that exigent circumstances exist is insufficient" to justify a warrantless search. *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000). Instead, "[w]hen reviewing a warrantless search to determine if exigent circumstances existed, this Court conducts an objective review"; we ask whether "a reasonable officer had a 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'" *United States v. Andrews*, 442 F.3d 996, 1000 (7th Cir. 2006) (quoting *United States v. Saadeh*, 61 F.3d 510, 516 (7th Cir. 1995)). We do not make this determination on "the facts as an omniscient observer would perceive them," but on the totality of facts and circumstances "as they would have appeared to a reasonable person *in the position of the . . . officer*—seeing what he saw, hearing what he heard." *Mahoney v. Kesery*, 976 F.2d 1054, 1057 (7th Cir. 1992) (emphasis in original).

When placed against this background, the offending question and answer here did not call for the officer's subjective assessment of the reasonableness of his actions. Instead, it was one of a series of questions designed to explain his progress through Evans's apartment—what

deductions he had made from the information he knew. Consequently, this information was helpful to the jury in assessing whether the officer's actions were objectively reasonable under the circumstances presented.

## C. Judgment as a Matter of Law

Ms. Bogan also seeks review of the district court's denial of her motion for judgment as a matter of law. We review a denial of a motion for judgment as a matter of law de novo, "'examining the record as a whole to determine whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, was sufficient to support the jury's verdict.'" *Walker v. Bd. of Regents of the Univ. of Wis. Sys.*, 410 F.3d 387, 393 (7th Cir. 2005) (quoting *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1173 (7th Cir. 2002)). In undertaking this inquiry, we must remember that "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts'" are within the province of the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). We shall reverse the verdict only if, on the basis of the admissible evidence, no rational jury could have found for the prevailing party. *Walker*, 410 F.3d at 393.

Ms. Bogan maintains that the officers' testimony was utterly unbelievable. Indeed, during trial, Ms. Bogan's counsel went to great lengths to make this point. Specifically, counsel brought out weaknesses in the officers'

testimony with respect to what they observed,[5] the information in their possession[6] and the actions that they took.[7]

Despite counsel's efforts, the jury heard evidence that entitled it to believe the officers' version of events. Officer Langley testified that, after he made eye contact with Pearson, Pearson ran out of the bedroom toward the rear of the apartment. While searching Evans's apartment for Pearson, the officers received a flash message that a black male was on the rear porch. Moving toward the back of the apartment, the officers proceeded through a doorway in the kitchen to a landing area or short hall with a stairwell to the right and a door immediately in front of them. Officer Breen testified that, having heard sirens, he believed that officers had surrounded the building and, therefore, that Pearson could not have escaped down the stairs. Instead, the officers believed that, given the flash message they had received, Pearson had fled through the door onto the back porch. The officers testified that they did not recall the light in the hallway, nor did they observe

---

[5] *See* R.123 at 182-84 (eliciting that Officer Breen did not recall seeing a door in the kitchen or a light in the hallway).

[6] *See* R.123 at 178 (questioning Officer Breen about whether they had heard any doors slamming or footsteps to guide their search); *id.* at 235 (eliciting from Officer Langley that the officers had not received a flash message that "male black was outside the second floor").

[7] *See* R.123 at 185 (questioning whether Officer Breen had considered whether Pearson had escaped down the stairs).

anything on Ms. Bogan's apartment door to suggest that the door led to another apartment, as opposed to the mudroom or porch. This testimony provided a sufficient basis from which the jury could conclude that the officers reasonably believed that a suspect was behind the door of what turned out to be Ms. Bogan's apartment. Consequently, we shall not disturb the jury's verdict.

## Conclusion

For the reasons set forth above, we affirm the judgment of the district court.

AFFIRMED