Jarrett J. HAMILTON, Plaintiff-Appellant,

v.

CITY OF NEW ALBANY, INDIANA, et al., Defendants-Appellees.

No. 16-3901

United States Court of Appeals, Seventh Circuit.

Submitted June 14, 2017 *

Decided June 16, 2017

---

* We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

Jarrett Hamilton, Pro Se

Robert Jeffrey Lowe, Attorney, Crystal G. Rowe, Attorney, Alyssa Cochran, Attorney, Kightlinger & Gray LLP, New Albany, IN, Stacy K. Newton, Attorney, Waters, Tyler, Hoffman & Scott, New Albany, IN, for Defendants-Appellees

Before JOEL M. FLAUM, Circuit Judge, ILANA DIAMOND ROVNER, Circuit Judge, ANN CLAIRE WILLIAMS, Circuit Judge

## ORDER

Employees of the City of New Albany, Indiana, twice removed vehicles and property from Jarrett Hamilton's yard and driveway without his consent. Hamilton sued the City and four employees under 42 U.S.C. § 1983, and the district court granted summary judgment for all defendants. We affirm that decision as to two of the individual defendants, because Hamilton lacks evidence that they participated in seizing his property, but otherwise we vacate the judgment and remand for further proceedings.

We recount the evidence in the light most favorable to Hamilton, the opponent of the motion for summary judgment. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 853 (7th Cir. 2017). The City of New Albany first performed a "cleanup" of Hamilton's property in 2013 when Judith Bischoff, the woman Hamilton was living with, was the owner of record. The Building Commissioner for New Albany, David Brewer, wrote Bischoff on February 22, 2013, giving her "10 days to remove all debris and blight throughout the property" or the City would "obtain a court order to have the debris and cars removed" at her expense. Brewer did not obtain a court order, however, and instead sent a second letter on May 24 informing both Bischoff and Hamilton that he had deemed the property a "hazard" and had scheduled it to be cleaned. Neither letter complied with a statutory requirement that Bischoff and Hamilton be told they could request an administrative hearing. *See* IND. CODE §§ 36-7-9-5(b)(6), 36-7-9-7. Instead, City employees arrived sometime in June 2013 and removed three vehicles and other property from the yard and porch. The City had not placed tags on the vehicles before impounding them, as required under Indiana's abandoned-vehicle law. *See* IND. CODE § 9-22-1-11. More than six months later, though, the City notified Bischoff and Hamilton that the cars would be auctioned unless they paid for towing and storage. They did not pay, and the City sold the cars in April 2014. Hamilton says that at some point the City sent a bill in excess of $4,000 for taking the property from the premises.

A second "cleanup" followed an August 2014 complaint filed by the City against

Bischoff in state court seeking approval to conduct an "emergency inspection" of the property. That complaint alleged that the house and appurtenant structures were being "used as a catch-all for trash and other refuse." The same day the complaint was filed, the state court issued a one-paragraph order granting the City "an emergency right to conduct an inspection of the property." That inspection never occurred, as far as the record shows. But soon after the order was issued, Bischoff conveyed the property to Hamilton, who was substituted as defendant in the City's lawsuit. Then in February 2015, almost six months after seeking the "emergency" inspection, the City asked for "emergency" authorization to clean up the property because, the City represented, "refuse on the outside" was enabling "rats and other vermin to flourish," presenting a "hazard to surrounding neighbors." The state court again issued a one-paragraph order, this time saying that the City had been "granted an emergency right to conduct a clean-up of the property." No hearing was held after the City's cleanup motion, as would be required under an Indiana law authorizing emergency cleanups of unsafe premises. *See* IND. CODE § 36-7-9-22(a). Also, cars are not mentioned in the City's motions or the court's two orders, yet after the second order the City impounded eight cars from Hamilton's driveway. Those vehicles, like the first three, were impounded without first being tagged, and they remain in the City's possession.

Hamilton sued in April 2015—two months after the second "cleanup." The district court screened his complaint, *see* 28 U.S.C. § 1915(e)(2)(B), *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999), and allowed two claims to proceed: that (1) Brewer, the Building Commissioner, and City employees Paul Speights, Dennis Smith, and John Burger had seized Hamilton's property in violation of the Fourth Amendment, and (2) the City had imposed excessive fines in violation of the Eighth Amendment. In granting summary judgment the district court reasoned that Hamilton lacked evidence that Smith or Burger was involved in taking his property, that a jury could not conclude his property was seized unreasonably, and that the City's fees were not punitive.

In this court the defendants initially contend that Hamilton's brief fails to satisfy Federal Rule of Appellate Procedure 28(a)(8). But we construe pro se filings liberally and "will address any cogent arguments we are able to discern in a *pro se* appellate brief." *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *see Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Hamilton's brief clearly argues that the seizures were unreasonable and the City's fees, excessive. We can "identify an articulable basis for error in his brief," *see Haxhiu v. Mukasey*, 519 F.3d 685, 691–92 (7th Cir. 2008), and see no reason to dismiss the appeal on this ground.

Hamilton does not challenge, however, the grant of summary judgment for Smith and Burger. Even if he did, that challenge would fail. A defendant must have personally participated in a violation of the Constitution to be liable under § 1983, *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009), and Hamilton never introduced any evidence that Smith or Burger was involved in seizing his property.

That is not the case, though, with Brewer or with Speights, a police department worker. Neither defendant disclaims involvement—Speights does not dispute that he removed the cars and other property—but both defendants contend that Hamilton failed to establish a property interest in the items taken, rendering irrelevant the question whether the seizures of those be-

longings were unreasonable. They point out that the three cars seized in 2013 were registered to Bischoff, not Hamilton. But the defendants confuse Indiana's registration requirement with proof of ownership. *See Storie v. Randy's Auto Sales, Inc.*, 926 N.E.2d 487, 489 (Ind. 2010) (noting that ownership of vehicle in Indiana is determined by Uniform Commercial Code instead of Certificate of Title Act); *Madrid v. Bloomington Auto Co., Inc.*, 782 N.E.2d 386, 391–95 (Ind. Ct. App. 2003) (same). And more importantly, ownership is not dispositive under the Fourth Amendment; a seizure occurs when a government official interferes with a "possessory interest." *See Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 65–66, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (holding that Fourth Amendment protects possessory interest even absent liberty or privacy interests); *United States v. Carlisle*, 614 F.3d 750, 758–59 (7th Cir. 2010) (recognizing that either ownership *or* possessory interest is needed to invoke Fourth Amendment rights). The evidence raises an inference that Hamilton at least had a possessory interest in the cars—he testified to purchasing them, and the City's impoundment notices were addressed to both Hamilton and Bischoff.

The defendants also argue that Hamilton abandoned his interest in the vehicles and other items seized from his property because, they say, he did nothing to protect his interest after being notified of the impending seizures. This contention misses the point. If, as Hamilton maintains, the City had no right to take his property, he cannot have "abandoned" anything by ignoring the City's unlawful commands. *See United States v. Alexander*, 573 F.3d 465, 472 (7th Cir. 2009) (recognizing that police misconduct cuts against inference of "abandonment"). This circular "abandonment" defense strikes at the very question the defendants seek to avoid—whether Brewer and Speights lawfully seized Hamilton's vehicles.

As for that question, the defendants argue that the district court correctly concluded that the seizures were "reasonable" and thus constitutional. The district court's analysis—which contrasts Hamilton's property rights against the City's asserted interest in public safety and health—does not address a crucial point: without a warrant or an exception to the warrant requirement, a seizure of private property is *presumptively* unreasonable. *See Illinois v. McArthur*, 531 U.S. 326, 330, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001); *Bell v. City of Chicago*, 835 F.3d 736, 738–39 (7th Cir. 2016), *cert. denied*, —— U.S. ——, 137 S.Ct. 1231, 197 L.Ed.2d 464 (2017). Probable cause to conduct a search for administrative rather than criminal purposes will exist if "reasonable legislative or administrative standards" are satisfied, but a *warrant* nonetheless is required. *Camara v. Mun. Ct. of the City and Cty. of S.F.*, 387 U.S. 523, 528–34, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *see Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 578 (7th Cir. 1999); *Wilson v. Health and Hosp. Corp. of Marion Cty.*, 620 F.2d 1201, 1208 (7th Cir. 1980). In this case, we are dealing with seizures rather than searches, but the same logic applies. *See Camara*, 387 U.S. at 528–34, 87 S.Ct. 1727 (describing policy reasons behind requiring warrants for administrative searches). Thus the question is not whether Brewer's and Speights's actions were "reasonable" but whether they were supported by an administrative warrant that satisfies state legislative or administrative standards, or by an exception to the warrant requirement. *See Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996).

In the district court Brewer and Speights contended that the seizures of Hamilton's property were authorized by

state law. On appeal the defendants effectively have abandoned this reliance on state law, which they mention in just one sentence of their 30-page brief. As we explain, this change of course was sensible, though the defendants have no fallback.

■ Brewer and Speights had argued first that the impoundment of three vehicles in 2013 and eight more in 2015 complied with Indiana statutes concerning "abandoned vehicles." *See* IND. CODE §§ 9-22-1-0.3 to 9-22-1-32. An exception to the Fourth Amendment's warrant requirement applies to impoundments authorized by statute. *See Bell*, 835 F.3d at 740; *Wilford v. State*, 50 N.E.3d 371, 375 (Ind. 2016); *Fair v. State*, 627 N.E.2d 427, 432 (Ind. 1993). Indiana law authorizes impoundment of "abandoned vehicles" in specified circumstances, including when a vehicle is "at least three (3) model years old, is mechanically inoperable, and is left on private property continuously in a location visible from public property for more than twenty (20) days." IND. CODE § 9-13-2-1(7).

It is undisputed that all 11 vehicles were more than 3 years old, but the defendants, whose burden it was to justify seizing Hamilton's property, *see Bogan v. City of Chicago*, 644 F.3d 563, 568 (7th Cir. 2011), offered scant evidence that any car was inoperable and no evidence that the cars had been left continuously in a location visible to the public for more than 20 days. Further, as Hamilton points out, a state official relying on § 9-13-2-1(7) must attach to the vehicle a "notice tag" containing the official's contact information and a warning that the vehicle is considered abandoned and will be removed after 72 hours if the owner does not take action. IND. CODE § 9-22-1-11. Only if a vehicle is tagged but then "not removed within the applicable period" does it become subject to impoundment. *Id.* § 9-22-1-14(b); *see Fields v. State*, 178 Ind.App. 350, 382

N.E.2d 972, 974–75 (1978) (holding that police officers had "had no legal right to remove" vehicle without following statutory notice procedures). There is no evidence that this procedure was followed, so a jury could not find that Brewer and Speights seized the cars under the authority of Indiana's impoundment laws.

■ In the district court Brewer and Speights also had sought to justify the seizures of Hamilton's cars and other belongings under Indiana's Unsafe Building Law, IND. CODE §§ 36-7-9-1 to 36-7-9-29. Not only does that law have no apparent relevance to vehicles, but there is no evidence that either seizure was supported by an administrative warrant under this law or any exception to the warrant requirement. For the 2013 seizure, Brewer and Speights focused at summary judgment on a portion of the law authorizing the "enforcement authority"—in this case, Brewer, as the Building Commissioner—to issue an administrative order requiring a homeowner to remove "trash, debris, fire hazardous material, or a public health hazard in and about the unsafe premises." IND. CODE § 36-7-9-5(a)(4). Such an order must include information specified by statute, including a statement that the order will become final after 10 days unless an administrative hearing is requested. *Id.* § 36-7-9-5(b)(6). Under this statutory scheme, Brewer did not have authority to direct a "cleanup" of Hamilton's property unless an appropriate order had been served on Hamilton in compliance with the statute and Hamilton did not ask for an administrative hearing as a prelude, if necessary, to judicial review in state court. *See id.* § 36-7-9-10(a).

There is no evidence that Brewer complied with the Unsafe Building Law before sending Speights to seize Hamilton's property. For that reason we can avoid the thornier question whether this "adminis-

trative order" scheme is a constitutionally permissible substitute for an administrative warrant. *See Platteville Area Apartment Ass'n*, 179 F.3d at 578 (noting that the Supreme Court "has not as yet held" that the requirements of particularity and issuance under oath "are to be bent for administrative warrants"). As far as the seizure of Hamilton's property in 2013 goes, neither of the letters Brewer sent to Bischoff and Hamilton that year told them they could demand a hearing under § 36-7-9-7, as an administrative order must under § 36-7-9-5(b)(6). This is significant because the City's right to perform a cleanup in this case, at least under the Unsafe Building Law, depended on Hamilton and Bischoff having known they could request a hearing but electing against a request. *Id.* § 36-7-9-10(a)(3). And Hamilton and Bischoff likely were under the impression that they would have an opportunity for some type of administrative or judicial review, since Brewer said in his February letter that he would "obtain a court order" and never did. Thus the letters in 2013 cannot be said to have complied reasonably with administrative or legislative standards.

Neither can the defendants rely on the two court orders obtained before the remaining cars and other property were taken in 2015. Only the second of those orders even purports to authorize a cleanup of Hamilton's property—on an "emergency" basis. Again, we do not address whether that order is constitutionally deficient in that it fails to describe the place to be searched or the property to be seized. *See Platteville Area Apartment Ass'n*, 179 F.3d at 578. Brewer and Speights have never attempted to demonstrate how they or anyone else actually complied with the provisions of the Unsafe Building Law. Instead, at summary judgment they asserted that the cleanup order was "equitable relief granted within the spirit" of § 36-7-9-18, the provision of the Unsafe Building Law authorizing "mandatory or prohibitory injunctions" to remedy unsafe premises. However, the state judge's order supports no such reading, and the City's application for that order does not cite *any* section of the Unsafe Building Law, let alone § 36-7-9-18. Moreover, that section applies only to persons with "a property interest in the unsafe premises," *id.* § 36-7-9-18(2), and so cannot have authorized the City to take action on Hamilton's property.

Nor does the state judge's order fall within the provision of the Unsafe Building Law allowing for an immediate cleanup to remedy emergency conditions. *Id.* § 36-7-9-22(a). That section requires a hearing to be "held within ten (10) days after the filing of a complaint." *Id.* As previously noted, there is no evidence that Hamilton was offered such a hearing. Another provision, § 36-7-9-21, allows a court to authorize the Building Commissioner to take action after a property owner has failed to comply with an administrative order that was issued under § 36-7-9-5 and has been "affirmed or modified at a hearing" and is not subject to judicial review, *id.* § 36-7-9-21(a). Since Brewer's two letters in 2013 were not valid administrative orders under state law, they could not support judicial action under § 36-7-9-21. Brewer and Speights thus failed to produce evidence to rebut the presumption of unreasonableness that follows from a warrantless search or seizure. *See Bogan*, 644 F.3d at 568; *Valance v. Wisel*, 110 F.3d 1269, 1278–79 (7th Cir. 1997).

■ What Brewer and Speights are left with are their contentions that the *Rooker-Feldman* doctrine, *see D.C. Ct. App. v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362

(1923), deprived the district court of subject-matter jurisdiction to address the 2015 seizure, and that they are shielded from liability for either seizure by the doctrine of qualified immunity. Initially we note that Brewer and Speights make only passing reference to applying the *Rooker-Feldman* doctrine, which is understandable because there is no support for their invocation of the doctrine. For Hamilton's claims to be barred by *Rooker-Feldman*, he must have had a "reasonable opportunity" to litigate them in state court. *See Jakupovic v. Curran*, 850 F.3d 898, 904 (7th Cir. 2017). With no evidence that any hearing was conducted pursuant to Indiana law, and with only a cursory order authorizing the removal of his property, we would be hard pressed to conclude that Hamilton had an opportunity to raise Fourth Amendment issues with the state court. *See id.; Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999). In any event, the state court's order did nothing more than grant permission to officials to "clean up" Hamilton's property (and said nothing about removing cars). Whether to act on that permission—including deciding how and what to seize—was the decision of Brewer and Speights, and it is possible to review their conduct without setting aside the state court's order. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *Mains v. Citibank, N.A.*, 852 F.3d 669, 675 (7th Cir. 2017).

■ Brewer and Speights also have attempted to invoke the shield of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). As we have explained, the defendants introduced no evidence that the "cleanups" or resulting vehicle impoundments were undertaken in compliance with state law, and only an administrative warrant satisfying state legislative or administrative standards could have justified the taking of Hamilton's belongings from his property. *See Camara*, 387 U.S. at 528–34, 87 S.Ct. 1727. Brewer and Speights still might have asserted that they did not act unreasonably—for example, if they made a reasonable mistake or relied on another City official to ensure compliance with the law, *see McGee v. Bauer*, 956 F.2d 730, 738 (7th Cir. 1992). But at summary judgment they did not try to explain their actions or to justify their noncompliance with state laws intended to allow for administrative searches complying with the Fourth Amendment. Thus, Brewer and Speights did not establish entitlement to qualified immunity.

With that we turn to Hamilton's claim against the City of New Albany under the Excessive Fines Clause of the Eighth Amendment. Hamilton appears to contend that the City imposed two excessive "fines"—not one as the City suggests: (1) a bill of approximately $4,300 for the 2013 cleanup and (2) for each vehicle a towing charge of $110 and storage fees of $20 per day. The City admitted that it billed Hamilton for "cleanup costs" but refused to submit evidence identifying the actual amounts billed. The City's right to charge Hamilton anything—whether for "cleanup costs," towing charges, or storage fees—hinges on the lawfulness of the seizures of the cars and other items. That is a question for a jury, so the district court's entry of summary judgment for the City on this claim was premature.

We have considered Hamilton's other contentions and none has merit. The district court's order granting summary judgment in favor of defendants Speights, Brewer, and the City of New Albany is VACATED, and as to these defendants the case is REMANDED for further proceedings consistent with this order. In all other

respects the judgment of the district court is AFFIRMED.